Lucian POTTER, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 41A04–0904–CR–217.

Court of Appeals of Indiana.

Sept. 11, 2009.

---

1. For a willful violation of Rule 11, an attorney may be subjected to appropriate disciplinary action. Ind. Trial Rule 11(A).

Peter D. Nugent, Thomas, Szostak, Thomas, & Nugent, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Marjorie Lawyer–Smith, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Lucian Potter appeals his conviction, after a bench trial, for operating a vehicle while intoxicated, as a class D felony, and the finding that he was an habitual substance offender.

We affirm.

### ISSUE

Whether the trial court erred when it admitted evidence of Potter's intoxication.

### FACTS

At approximately 12:30 a.m. on May 5, 2006, Officer Nicholas Dine was on patrol in Greenwood and traveling westbound on County Line Road. He noticed a blue SUV in front of him "weaving within its lane of travel" for approximately one-half mile. (Tr. 4, 31). The vehicle then turned "southbound on Madison Avenue, and ... almost struck" the concrete median, having "to turn back so it didn't hit it." (Tr. 31, 32). Traveling southbound on Madison, the SUV continued "weaving within its lane." *Id.* Although its tires "never crossed" the fog lines, it was "touching" them. (Tr. 33, 69). The vehicle "was not slowly drifting" but was "constant[ly]" weaving; its path "never straightened ... and kept going straight." (Tr. 8, 11).

After observing the foregoing, Officer Dine activated his lights and stopped the SUV. When he asked the driver, Potter, for his license, Potter informed him that it was suspended. Dine smelled "an odor of alcoholic beverage," and asked Potter if he had consumed any "alcoholic beverages"; Potter admitted that he had consumed "five (5) or six (6) beers." (Tr. 34). Potter's eyes were glassy and bloodshot, and he was "wobbly" and somewhat unsteady when he stepped out of the car. (Tr. 36). Dine administered three field sobriety tests, all of which Potter failed. He administered a portable breath test, and Potter "was well over the limit." (Tr. 52).

Dine then transported Potter to the station, where a DataMaster test indicated that Potter's blood alcohol content was .14.

On May 8, 2006, the State charged Potter with operating a vehicle while intoxicated, as a class D felony; operating a vehicle while intoxicated endangering a person, as a class A misdemeanor; operating a vehicle while intoxicated, as a class C misdemeanor; and operating a vehicle with an alcohol equivalency of .08 or more, a class C misdemeanor. The State also alleged that Potter was an habitual substance offender. At a pretrial hearing on July 25, 2007, Potter moved to suppress the evidence from the traffic stop of his vehicle. On August 22, 2007, the trial court conducted a hearing thereon, and heard Officer's Dine's testimony. It denied the motion later that day.

On May 27, 2008, the trial court conducted a bench trial. Dine again testified. Potter renewed his motion to suppress, arguing that "the stop was not proper." [1] (Tr. 63). The trial court took the renewed motion under advisement. On June 16, 2008, the trial court denied the motion to suppress. On November 12, 2008, it found Potter guilty on all counts and to be an habitual substance offender. On December 22, 2008, the trial court sentenced Potter on the D felony count of operating a vehicle while intoxicated, with an enhanced term for being an habitual substance offender.[2]

### DECISION

Potter frames his issue as whether "a traffic stop [is] supported by reasonable suspicion" such that it does not violate the Fourth Amendment "when police observe no traffic infractions committed by the driver who was merely swerving within his lane." Potter's Br. at 1. In other words, he challenges the denial of his motion to suppress. When reviewing a trial court's ruling on the admissibility of evidence from an allegedly illegal search, we do not reweigh the evidence but defer to the trial court's factual determinations unless clearly erroneous and view conflicting evidence most favorably to the ruling. *Meredith v. State*, 906 N.E.2d 867, 869 (Ind.2009). We consider "afresh any legal question of the constitutionality of a search or seizure." *Id.*

The Fourth Amendment is not violated by a brief, investigatory stop conducted by an officer who has a reasonable, articulable suspicion—based on the totality of the circumstances—that criminal activity is afoot. *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *see also Sellmer v. State*, 842 N.E.2d 358, 360 (Ind.2006). Thus, reasonable suspicion to justify an investigative stop must be based on specific and articulable facts known to the officer at the time of the stop that led the officer to believe that "criminal activity may be afoot." *Finger v. State*, 799 N.E.2d 528, 533–34 (quoting *Terry*, 392 U.S. at 30, 88 S.Ct. 1868). Reasonable suspicion requires more than mere hunches or unparticularized suspicions. *Id.* As Indiana's Supreme Court recently stated, in order to make a valid traffic stop, the officer "must possess at least reasonable suspicion that a traffic law has been violated or that other criminal activity is taking

---

**1.** As the State notes, Potter did not expressly object to Dine's trial testimony describing the various evidence of Potter's intoxication. In fact, Dine had virtually completed his testimony on direct examination when Potter's counsel noted his earlier motion to suppress and

"renew[ed]" the motion "because ... the stop wasn't proper." (Tr. 63, 64).

**2.** No judgments of conviction were entered on the three misdemeanor counts, and the abstract indicates that these were "dismissed." (App.63).

place." *Meredith,* 906 N.E.2d at 869 (emphasis added).

Potter cites a Maryland case, *Lewis v. State,* 398 Md. 349, 920 A.2d 1080 (2007), which held that "police did not have justification to conduct [an] investigatory traffic stop based upon the fact that Lewis 'almost' hit'" a police car stopped nearby. *Id.* at 1085. We note that Potter was not stopped because he had "almost" committed a traffic infraction but because the officer observed multiple movements by his vehicle that indicated possible driver impairment. *Id.* Further, his brief concedes that Indiana "has not adopted the reasoning of *Lewis.*" Potter's Br. at 4.[3]

 Nevertheless, Potter urges that pursuant to the reasoning of *Lewis* and the dissent in *Barrett v. State,* 837 N.E.2d 1022 (Ind.Ct.App.2006), *trans. denied,* a traffic stop that comports with the Fourth Amendment should require that the officer "observe some traffic violation before initiating a traffic stop." Potter's Br. at 6. In *State v. Campbell,* 905 N.E.2d 51 (Ind.Ct. App.2009), *trans. denied,* we held that "a traffic violation is not a condition precedent to a stop otherwise supported by the facts." *Id.* at 55 (citing *Bannister v. State,* 904 N.E.2d 1254 (Ind.2009)). Specifically, "an officer may make a *Terry* stop of a vehicle to investigate an offense other than a traffic violation, as long as the officer has reasonable, articulable suspicion that a crime is being or has been committed." *Id.* The scope of a *Terry* stop includes "inquiry necessary to confirm or dispel the officer's suspicions." *Hardister v. State,* 849 N.E.2d 563, 570 (Ind.2006).

Officer Dine testified that his law enforcement training and experience had taught him that erratic vehicle movements were "a telltale sign of impairment or [that] someone's ill or injured"; and that after he observed the SUV continuously weave from side to side in its lane and nearly strike a concrete median when making a turn, he "wanted to . . . check and make sure [the driver] was okay," *i.e.,* that the circumstances "bore further investigation." (Tr. 12, 13). These are articulable facts that support the reasonable suspicion that criminal activity was taking place, to wit: that the driver was operating the SUV while impaired from intoxication. Such circumstances warranted a brief traffic stop to "confirm or dispel" Dine's suspicion in this regard. *Hardister,* 849 N.E.2d at 570.

This was a proper stop traffic stop due to the officer's reasonable suspicion of driver impairment. Therefore, the trial court did not err in refusing to suppress the resulting evidence on this basis. *See Meredith,* 906 N.E.2d at 874.

Affirmed.

ROBB, J., and MATHIAS, J., concur.

---

**3.** In addition, *Lewis* stated that a traffic stop "violates the Fourth Amendment where there is no reasonable suspicion that the car is being driven contrary to the laws governing the operation of motor vehicles *or* that either the car or any of its occupants is subject to seizure or detention in connection with the violation of any other applicable laws." 920 A.2d at 1087 (citing *Delaware v. Prouse,* 440 U.S. 648, 650, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979)) (emphasis added). Hence, arguably *Lewis* would not render the instant traffic stop invalid -given the officer's observations supporting a reasonable suspicion of impairment.