**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Dec 28 2012, 10:06 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GARY R. ROM**
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**IAN O'KEEFE**
Lafayette, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 79A02-1206-CR-496 |
| | ) | |
| BLAKE LODDE, | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE TIPPECANOE SUPERIOR COURT
The Honorable Michael Morrissey, Judge
Cause No. 79D06-1011-FD-267

**December 28, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

The State appeals the trial court's granting of Blake Lodde's motion to suppress. We reverse and remand.

**Issue**

The sole issue before us is whether the trial court properly concluded that a police officer lacked reasonable suspicion to stop Lodde to investigate whether he had committed the offense of operating a vehicle while intoxicated ("OWI").

**Facts**

We stated the facts in a previous appeal in this matter as follows:

> In late 2010, Deputy John Lendermon of the Tippecanoe County Sheriff's office was conducting routine status checks of several registered sex offenders assigned to him, one of whom was Lodde. While the two spoke at Lodde's home, Deputy Lendermon smelled a "very strong odor of an alcoholic beverage" emanating from Lodde and observed bloodshot, swollen, and glassy eyes. Transcript at 6; Appendix of Appellant at 11, 13. Deputy Lendermon later explained: "I just kind of put [my observations] aside, he was at home, he's an adult. I didn't really think a whole lot about it; I just kind of made a mental note of it." Tr. at 6. When later asked if Lodde told the deputy that he woke up just prior to the deputy's arrival, Deputy Lendermon conceded that Lodde "may have," but he did not remember. Id. at 10. Deputy Lendermon did not notice any problem with Lodde's balance or manual dexterity and did not recall Lodde slurring his speech.
>
> Deputy Lendermon returned to his car to enter information regarding the status check into his computer, and saw Lodde enter his own car and begin to drive away. When Lodde turned from his driveway onto a street, the deputy pursued him and initiated an investigatory stop. Deputy

2

Lendermon admitted he did not follow Lodde long enough to observe Lodde drive in a way that suggested he was impaired. He pulled over Lodde because: he "felt that [Lodde] was potentially intoxicated and . . . just wanted to make sure that [Lodde] was okay to drive," id. at 8, "the possibility of there being an accident or something like that was too great to not intervene immediately[,]" and "the odor [of alcohol] was that strong" during their initial conversation. Id. at 11–12.

Upon being pulled over, Lodde admitted he drank five or six beers "a few hours ago." App. of Appellant at 11 (quoting from the deputy's report). Lodde also submitted to field sobriety tests and a portable breath test. Finally, he was transported to the jail for a blood draw, urine screen, and breathalyzer test, which indicated he had 0.10 grams of alcohol per 210 liters of breath.

The State charged Lodde with operating while intoxicated and operating a vehicle with a blood alcohol content of greater than 0.08 and less than 0.15, both Class C misdemeanors, and operating while intoxicated with a prior conviction for operating while intoxicated within the last five years, a Class D felony. Lodde filed a motion to dismiss which the trial court treated as a motion to suppress evidence gathered upon pulling over Lodde.

State v. Lodde, No. 79A02-1111-CR-1067 (Ind. Ct. App. April 30, 2012). The trial court granted Lodde's motion to suppress, and the State appealed.

In the first appeal, we held that the trial court erroneously granted the motion to suppress because it had applied an incorrect standard in reviewing whether Deputy Lendermon had properly pulled Lodde over. Namely, the trial court had considered whether Deputy Lendermon had probable cause to pull Lodde over, while the correct standard was whether Deputy Lendermon had reasonable suspicion to make the stop. We remanded for the trial court to consider whether the State proved the existence of

3

reasonable suspicion. After reconsidering the matter but not conducting another evidentiary hearing, the trial court again granted the motion to suppress. The State again appeals pursuant to Indiana Code Section 35-38-4-2(5).

**Analysis**

When reviewing the granting of a motion to suppress, we neither reweigh evidence nor judge witness credibility, and will consider only the evidence most favorable to the trial court's ruling. State v. Seidl, 939 N.E.2d 679, 683 (Ind. Ct. App. 2010). The State is appealing a negative judgment when a trial court grants a motion to suppress and it must show that the trial court's ruling was contrary to law. Id. In such a situation, the State has the burden of demonstrating to this court that the evidence is without conflict and that the evidence and all reasonable inferences therefrom lead to a conclusion opposite that reached by the trial court. Id.

Lodde argues, and the trial court agreed, that Deputy Lendermon lacked reasonable suspicion to pull him over on the basis of observations Deputy Lendermon made shortly before Lodde began driving, especially since Deputy Lendermon did not observe Lodde commit any traffic violations. Under the Fourth Amendment to the United States Constitution, a brief, investigatory stop of a citizen by police—such as a traffic stop—must be based upon a reasonable, articulable suspicion, based on the totality of the circumstances, that criminal activity is afoot. Potter v. State, 912 N.E.2d 905, 907 (Ind. Ct. App. 2009). Reasonable suspicion must be based upon specific and articulable facts known to the officer at the time of the stop and is not satisfied by mere hunches or

4

unparticularized suspicions. Id. To make a valid traffic stop, an officer "'must possess at least reasonable suspicion that a traffic law has been violated or that other criminal activity is taking place.'" Id. at 907-08 (quoting Meredith v. State, 906 N.E.2d 867, 869 (Ind. 2009)). Reasonable suspicion is a less demanding standard than probable cause and requires a showing of possible criminality that is considerably less than a preponderance of the evidence. Shell v. State, 927 N.E.2d 413, 419 (Ind. Ct. App. 2010).

In Potter, we held that an officer had reasonable suspicion to initiate a traffic stop for suspected OWI even though the defendant had not committed any traffic infractions, where the officer had observed driving movements that were indicative of intoxication, i.e. weaving inside of a single lane of traffic. Id. at 908. More directly on point, we stated in State v. Morris, 732 N.E.2d 224, 228 (Ind. Ct. App. 2000), that an officer's detection of alcohol on the breath of a motorist after pulling him over for a seatbelt violation provided "reasonable suspicion" that the motorist was driving under the influence and warranted further investigation for OWI. Similarly, we held in Kenworthy v. State, 738 N.E.2d 329, 331-32 (Ind. Ct. App. 2000), trans. denied, that although the original reasonable suspicion for a traffic stop for driving while suspended had disappeared in that the driver was not who the officer thought it was, the officer had "reasonable suspicion" to continue the stop for investigation of OWI when the officer smelled alcohol coming from the vehicle. Thus, Potter, Morris, and Kenworthy clearly establish that detecting the odor of alcohol from a vehicle or driver constitutes reasonable suspicion to detain the driver for investigation of OWI, independent of whether a traffic

5

infraction has been committed. Additionally, the fact that traffic stops for other reasons had already been made in Morris and Kenworthy before the odor of alcohol had been detected, unlike the present case, is a distinction without a difference. Reasonable suspicion is reasonable suspicion, regardless of when or in what context it arises.

Also, as the State notes, the level of reasonable suspicion in this case would appear to exceed that in Bogetti v. State, 723 N.E.2d 876 (Ind. Ct. App. 2000), which our supreme court discussed with approval in State v. Renzulli, 958 N.E.2d 1143 (Ind. 2011). In Bogetti, we affirmed the trial court's denial of a motion to suppress OWI-related evidence where the only information possessed by an officer conducting a traffic stop was a citizen tip that a driver who had just left a restaurant "may be intoxicated"; there was no indication that the driver had committed any traffic infraction or engaged in any erratic driving before the stop was made. Bogetti, 723 N.E.2d at 879.[1] Here, Deputy Lendermon's suspicion that Lodde was driving while intoxicated was based upon his personal observation just moments before Lodde got into his car and drove away that Lodde smelled of alcohol and had bloodshot, glassy eyes. We are not asked here to determine whether this evidence would have been sufficient to convict Lodde of OWI or even to arrest him for that offense. It was sufficient to constitute reasonable suspicion, based on articulable facts, for Deputy Lendermon to stop Lodde's vehicle and investigate

---

[1] As Lodde notes, the defendant in Bogetti lost a motion to suppress and appealed, whereas here the State lost and is appealing, which leads to a different standard of review. Still, for purposes of providing clear guidance to law enforcement officers, we believe traffic stops based on objectively similar evidence should lead to objectively similar suppression results, regardless of which trial court is ruling in the matter.

further whether he was intoxicated. As such, the stop of Lodde's vehicle was permissible under the Fourth Amendment.

Lodde separately argues that the stop of his vehicle violated Article 1, Section 11 of the Indiana Constitution. An individual's freedom of movement under this provision, which parallels the Fourth Amendment, "is not absolute, for society has a right to protect itself." Renzulli, 958 N.E.2d at 1146. Generally, the reasonableness of a search or seizure under the Indiana Constitution turns on a balance of: "1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs." Litchfield v. State, 824 N.E.2d 356, 361 (Ind. 2005).[2]

Here, Deputy Lendermon did not randomly and arbitrarily select Lodde to be pulled over. While conducting a routine check of sex offenders, Deputy Lendermon observed possible signs that Lodde could be intoxicated moments before he got into his car and drove away from home. As for the degree of intrusion into Lodde's ordinary activities caused by him being pulled over and investigated for OWI, our supreme court has expressly observed that a brief stop of an automobile—in particular in connection with a drunk driving roadblock—is a "relatively minor" intrusion upon a citizen's freedom of movement. Id. at 360. Finally, it goes without saying anymore that drunk

---

[2] In Renzulli, our supreme court seemed to rely solely upon a "reasonable suspicion" analysis, which is rooted in Fourth Amendment jurisprudence, in resolving a defendant's claim of an illegal traffic stop under Article 1, Section 11. The Renzulli opinion did not employ the Litchfield three-part test for examining the legality of a search or seizure under the Indiana Constitution. Regardless, having already found reasonable suspicion for the stop of Lodde under the Fourth Amendment, out of an abundance of caution, we will also apply the Litchfield analysis to his claim.

driving is extremely dangerous to society, resulting in tens of thousands of deaths, hundreds of thousands of injuries, and billions of dollars in property damage throughout the United States annually. See Renzulli, 958 N.E.2d at 1148-49 (citing Michigan Department of State Police v. Sitz, 496 U.S. 444, 451, 110 S. Ct. 2481, 2485-86 (1990)). The extent of law enforcement needs and the interests of society in general in combatting drunk driving, through proactive enforcement of OWI laws, are very high. In balancing the three Litchfield factors, we cannot say that Deputy Lendermon's stop of Lodde was unreasonable under the Indiana Constitution.

We conclude, after reviewing all the evidence in a light most favorable to the trial court's ruling, that that ruling is contrary to law. Deputy Lendermon's stop of Lodde was valid under both the United States and Indiana Constitutions.

### Conclusion

We reverse the granting of the motion to suppress and remand for further proceedings consistent with this opinion.

Reversed and remanded.

BAKER, J., concurs,

RILEY, J., dissents.

8