# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**MARK SMALL**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

FILED
Apr 04 2013, 9:15 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| THOMAS PORTER, | ) |
| | ) |
| Appellant-Defendant, | ) |
| | ) |
| vs. | )  No. 49A02-1205-CR-398 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee-Plaintiff. | ) |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Grant W. Hawkins, Judge
Cause No. 49G05-1105-FD-33732

**April 4, 2013**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

Thomas Porter appeals his conviction and sentence for operating a vehicle after a lifetime suspension. Porter raises three issues which we revise and restate as:

I. Whether the trial court abused its discretion by admitting evidence obtained as a result of a traffic stop; and

II. Whether the court exceeded statutorily prescribed limits when it suspended Porter's driving privileges for life.

We affirm in part, reverse in part, and remand.

## FACTS AND PROCEDURAL HISTORY

On May 12, 2011, Indianapolis Metropolitan Police Officer John Montgomery observed Porter driving a vehicle for approximately one to two minutes. Officer Montgomery could not see the license plate from fifty feet away, initiated a traffic stop, and discovered that Porter was driving while he was suspended for life.

On May 13, 2011, the State charged Porter with operating a motor vehicle while being an habitual traffic violator as a class D felony,[1] and on June 10, 2011, with Count II, operating a motor vehicle after his license had been forfeited for life as a class C felony.[2]

On November 18, 2011, Porter filed a motion to suppress evidence and challenged "each stage of the encounter." Appellant's Appendix at 43. On January 5, 2012, the court held a hearing. The parties focused on the license plate light during the hearing, and the court admitted photographs of the vehicle. The court later stated that "if

---

[1] Ind. Code § 9-30-10-16 (2004).

[2] Ind. Code § 9-30-10-17 (2004).

the pictures show me what the officer saw, then the equipment problem that caused the stop was a justifiable reason for a stop," and then denied Porter's motion. Id. at 52.

On March 1, 2012, the court held a bench trial, and Porter renewed his motion to suppress evidence. Porter introduced the testimony of Joseph Porter, the passenger in the vehicle on the night of the stop, and testimony from Pam Porter, the owner of the vehicle, as well as various photographs of the vehicle. Pam testified that the vehicle was a 1995 Chevy Camaro, that she had owned the vehicle for two and one-half years, and that she had not altered the vehicle since the date of Porter's arrest. When asked to compare one of the photographs of the vehicle with how his eyes saw the vehicle, Joseph testified that the photograph was "really way off" and that he could not see anything on the photograph but "could see clearly the night when [they were] out there looking at the plate." Id. at 112. Porter's counsel argued:

> There's CFR's that manufacturers have to comply with, 49 CFR 571.108 that deals with lamps and bulbs and reflective devices. This would be a different story, Judge, if this was a kit car, a stock car, people would put parts from one car on and a part was damaged and they would put after market parts on and so forth. It would be different if it was adjustable, if [sic] would be different if there were two lights, the manufacturer had two lights on each . . . and one light was burnt out.

Id. at 122-123. The court stated:

> [T]here is a line of demarcation on the license plate itself where part of it is clearly illuminated and part of it is barely illuminated. The portion that is barely illuminated is not readable. I think the statute to have, to make sense has to require that the light be enough to make the plate readable and not merely in less shadow than it would be if there were no light.

Id. at 130. The court denied Porter's motion.

3

Porter's counsel then stipulated that the testimony of Officer Montgomery from the hearing on the motion to suppress would be admitted for purposes of the trial subject to the objection under Article 1, Section 11, and the Fourth Amendment. The court continued the trial to March 23, 2012.

On March 23, 2012, Porter's counsel made the following statements during closing argument:

> Judge, when we started the trial back on March 1st we (indecipherable) in the record on the motion to suppress, this court also as part of the State's case-in-chief took notice of the record we had made in January with regard to suppression. Part of that record, Judge was my complaining like a broken record about the license plate light not being a valid stop and then in my closing statements at the end of the suppression hearing in January I said as a side note the State also hasn't proven that the officer was in either a fully marked vehicle or in uniform and I said I'm not saying that that's going to make your issue, you know, I imagine they can easily overcome that and present such evidence. When we showed here for trial on March 1st and he called and asked his officer some other questions, I didn't hear him ask if there was a fully marked vehicle, I didn't hear him ask if he was in a distinctive, uh, met the requirements of the uniform and it's the statute that deals with this is 9-30-2-2 which requires either one of those and there's a bunch of cases that require those with regard to the State proving their case then, um, there's a challenge on the stop and one of the best ones, one of the more recent ones is [Bovie v. State] and I've got a copy of that case right here.

Id. at 181-182. The court indicated that it had read the important parts of Bovie, found Porter guilty of Count II, operating a motor vehicle after his license had been forfeited for life as a class C felony, and dismissed Count I based upon double jeopardy concerns.

On April 20, 2012, the court held a sentencing hearing. At the hearing, Porter's counsel informed the court that Porter had an "AMS petition pending in Tippecanoe County" related to an arrest on August 25, 2008, and "[s]ince then the conviction up there was reduced to a misdemeanor." Id. at 189. The State acknowledged that Porter's

license was no longer suspended for life because he received alternative misdemeanor sentencing on his last D felony conviction, but requested that the court suspend Porter's license for life. Porter's counsel conceded that the fact that Porter's license was no longer forfeited for life was not a defense because at the time of the offense in question his license was actually forfeited for life, but argued that the court could not order a lifetime suspension.[3] The court sentenced Porter to four years in the Department of Correction and suspended Porter's driving privileges for life.

---

[3] Specifically, the following exchange occurred:

| | |
|---|---|
| [Porter's Counsel]: | [A] C felony (indecipherable) does not carry a license suspension upon conviction. Unlike the D felony HTV that specifically in the statute gives the court authority to suspend a license. . . . |
| THE COURT: | It sounds like you're saying that [the prosecutor] is requesting that I order a lifetime suspension and you're saying I can't do that. |
| [Porter's Counsel]: | That's correct, respectfully I'm saying that. |

* * * * *

| | |
|---|---|
| [Porter's Counsel]: | The conviction in this case was not under 9-30-10-16, it was under 9-30-10-17 – |
| THE COURT: | That's this one, that's the one that brings us here today. |
| [Porter's Counsel]: | That's correct. Now this tells us that in a D felony conviction such as in Tippecanoe County, that if on the D felony he had to be suspended for life, if the misdemeanor, the court then can suspend for a period of years. |
| [Porter's Counsel]: | (c) says in addition to any criminal penalty, any person who is convicted of a felony under subsection (a) – |
| THE COURT: | Well, I'll give you something to appeal. Let's move on. |

Transcript at 200-203.

ISSUES

I.

The first issue is whether the trial court abused its discretion by admitting evidence, i.e., Porter's identity as the driver of the vehicle, obtained as a result of a traffic stop. Although Porter originally challenged the admission of the evidence through a motion to suppress, he now challenges the admission of the evidence at trial. Thus, the issue is appropriately framed as whether the trial court abused its discretion by admitting the evidence. See Jefferson v. State, 891 N.E.2d 77, 80 (Ind. Ct. App. 2008), trans. denied; Lundquist v. State, 834 N.E.2d 1061, 1067 (Ind. Ct. App. 2005).

Porter appears to argue that the evidence should have been suppressed because: (A) the license plate light on the vehicle was operational; and (B) Officer Montgomery was not in full uniform or a marked police vehicle.

A.      License Plate Light

Porter argues that the traffic stop was without a warrant and the officer's ground for stopping the vehicle based upon the license plate light was improper. Porter also argues that "since the light worked, and there was no evidence [the] vehicle was other than as it had been made or altered in any way, Porter met his burden of proof as to suppression." Appellant's Brief at 13. Porter also refers to Ind. Code § 9-19-6-24 which provides:

(a)      This section does not apply to a person who owns or operates a vehicle or combination of vehicles that:

(1)      contains parts and accessories; and

(2)      is equipped;

6

> as required under regulations of the United States Department of Transportation.

> (b) A person who violates this chapter commits a Class C infraction.

Porter points out that his wife owned the vehicle and testified that she had never altered the license plate light.

The State argues that Officer Montgomery's testimony and the photos are all that are required to support a violation of Ind. Code § 9-19-6-4(e) and to justify a stop on that basis. With respect to Ind. Code § 9-19-6-24, the State asserts that "[b]y its own terms, application of Section 24 does nothing more than exempt a violation of a statute from also being an infraction," and that "[i]t does not purport to negate the violation of the statute." Appellee's Brief at 9. The State contends that subsection 24 "maintains the violation but eliminates the penalty for such a violation." Id.

The Fourth Amendment to the United States Constitution protects an individual's privacy and possessory interests by prohibiting unreasonable searches and seizures.[4] State v. Sitts, 926 N.E.2d 1118, 1120 (Ind. Ct. App. 2010) (citing State v. Rager, 883 N.E.2d 136, 139 (Ind. Ct. App. 2008)). These safeguards extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest. Id. The State has the burden of demonstrating that the measures it used to seize evidence were constitutional. Id. "In reviewing the trial court's ruling on the admissibility of evidence from an allegedly illegal search, an appellate court does not reweigh the evidence but defers to the trial court's factual determinations unless clearly erroneous." Meredith v. State, 906

---

[4] On appeal, Porter cites only to the Fourth Amendment and not to Article 1, Section 11 of the Indiana Constitution.

N.E.2d 867, 869 (Ind. 2009). An appellate court also "views conflicting evidence most favorably to the ruling, and considers afresh any legal question of the constitutionality of a search or seizure." Id. See also Brown v. State, 653 N.E.2d 77, 81 (Ind. 1995) ("In evaluating the propriety of a warrantless search on appeal, the trial court's findings of fact are accepted unless clearly erroneous and the review of the conclusions of law is performed *de novo*.").

Because a traffic stop is a seizure under the Fourth Amendment, police may not initiate a stop for any conceivable reason, but must possess at least reasonable suspicion that a traffic law has been violated or that other criminal activity is taking place. Meredith, 906 N.E.2d at 869. "An officer's decision to stop a vehicle is valid so long as his on-the-spot evaluation reasonably suggests that lawbreaking occurred." Id. at 870. "This discretion, however, does not extend to an officer's mistaken belief about what constitutes a violation as a matter of law." Id.

Here, Officer Montgomery initiated a traffic stop because he could not see the license plate from fifty feet away. Ind. Code § 9-19-6-4(e) requires illumination of license plates and provides in part: "Either a tail lamp or a separate lamp must be placed and constructed so as to illuminate the rear registration plate with a white light and make the plate clearly legible from a distance of fifty (50) feet to the rear."

The following exchange occurred during the direct examination of Officer Montgomery:

Q  What did you notice about [the vehicle]?

A  The license plate was what appeared to be angled upward and in fact that I couldn't see the license plate light from 50 feet away.

8

Q      Excuse me, you couldn't see the light or you couldn't see the plate?

A      I could not see the license plate from 50 feet away.

Q      Okay.  So what did you do when you couldn't see the license plate?

A      Initiated the traffic stop.

Q      How close did you get to the car while you were effecting the traffic stop?

A      Approximately around 15 feet away.

Q      Could you see the license plate then?

A      No.

Q      Did you ever actually see the license plate?

A      Yes, sir.

Q      To a point where you could read it?

A      Yes.

Q      When?

A      When I used my spotlight on my police vehicle.

Transcript at 9-10.

The trial court examined the license plate light and observed that "it couldn't be pointed in any particular direction," Id. at 69, but also stated:

> [T]here is a line of demarcation on the license plate itself where part of it is clearly illuminated and part of it is barely illuminated.  The portion that is barely illuminated is not readable.  I think the statute to have, to make sense has to require that the light be enough to make the plate readable and not merely in less shadow than it would be if there were no light.

9

Id. at 130. While Porter introduced photographs of the vehicle, some of the pictures were taken well within fifty feet of the vehicle and at least one of the pictures was from about twenty feet, and the flash from the camera itself illuminated the plate when the picture was taken.

The record reveals evidence that Officer Montgomery had a reasonable and objectively justifiable basis for making the initial traffic stop. Even assuming that Porter's vehicle met federal regulations,[5] we cannot say that Officer Montgomery lacked reasonable suspicion to initiate a traffic stop of Porter's vehicle when he could not see the license plate from fifty feet away. See Potter v. State, 912 N.E.2d 905, 908 (Ind. Ct. App. 2009) (holding that a traffic violation is not a condition precedent to a stop otherwise supported by the facts); see also U.S. v. Cashman, 216 F.3d 582, 587 (7th Cir. 2000) (holding that "[t]he propriety of the traffic stop does not depend . . . on whether [the defendant] was actually guilty of committing a traffic offense by driving a vehicle with an excessively cracked windshield," that "[t]he pertinent question instead is whether it was reasonable for [the officer] to *believe* that the windshield was cracked to an impermissible degree," and that "the Fourth Amendment requires only a reasonable assessment of the facts, not a perfectly accurate one"). Under the circumstances, we cannot say that the trial court abused its discretion or erred in admitting the evidence obtained after the stop. See Meredith, 906 N.E.2d at 872-873 (holding that the improper display of registration may constitute reasonable suspicion for a traffic stop); Houston v. State, 898 N.E.2d 358 (Ind. Ct. App. 2008) (holding that non-compliance with statutory

---

[5] Neither party points to a specific portion of 49 C.F.R 571.108, which provides requirements for license plate lights.

10

requirements concerning placement, secure attachment, illumination and legibility of a license plate may serve as a basis for reasonable suspicion for law enforcement officers to make a traffic stop to ascertain whether the display fully complies with all statutory requirements), trans. denied.

B.      Uniform / Marked Police Vehicle

Porter phrases the issue as "[w]hether the trial court clearly erred when it overruled Porter's timely objection that the State did not present any evidence that the police officer who made the traffic stop was in a fully marked car or uniform at the time of the stop." Appellant's Brief at 1. Porter argues that the stop and arrest were illegal and appears to suggest that the trial court abused its discretion by admitting evidence, i.e. Porter's identity as the driver, following the stop of the vehicle based upon Ind. Code § 9-30-2-2.

On appeal, Porter points only to his counsel's statements during closing argument regarding whether the State had established that the arresting officer was in a fully marked vehicle or in uniform as required by Ind. Code § 9-30-2-2. Porter argues that the arrest was in violation of the statute, and the trial court erred when it dismissed counsel's argument by stating: "I've read the important parts of [Bovie]. Anything else?" Appellant's Brief at 13.

The State points out that the probable cause affidavit indicated that Officer Montgomery returned to his fully marked police vehicle after stopping Porter, and acknowledges that the probable cause affidavit does not appear to have been formally admitted as evidence, but argues that "it is equally clear from the multiple references to

11

the document that the parties and the court treated it as though it had been." Appellee's

Brief at 12. The State also argues that the fact that Officer Montgomery was in a marked

police car is implied by his testimony that he pointed his spotlight at the license plate.

The State contends that the "uniform/marked vehicle requirement is pertinent to an

inquiry into whether an investigatory stop is licit and no more." Id.

Ind. Code § 9-30-2-2 provides that in order for an officer to make an arrest or

issue a traffic information or summons for a violation of a law regulating operation of a

motor vehicle, the officer must be either wearing a uniform and badge, or driving a

clearly marked police vehicle. Bovie v. State, 760 N.E.2d 1195, 1198 (Ind. Ct. App.

2002). Specifically, Ind. Code § 9-30-2-2 provides:

> A law enforcement officer may not arrest or issue a traffic information and
> summons to a person for a violation of an Indiana law regulating the use
> and operation of a motor vehicle on an Indiana highway or an ordinance of
> a city or town regulating the use and operation of a motor vehicle on an
> Indiana highway unless at the time of the arrest the officer is:
>
> > (1)    wearing a distinctive uniform and a badge of authority;
> > or
> >
> > (2)    operating a motor vehicle that is clearly marked as a
> > police vehicle;
>
> that will clearly show the officer or the officer's vehicle to casual
> observations to be an officer or a police vehicle. This section does not
> apply to an officer making an arrest when there is a uniformed officer
> present at the time of the arrest.

"The purpose of this statute is to protect drivers from police impersonators and to protect

officers from resistance should they not be recognized as officers." Ervin v. State, 968

N.E.2d 315, 318 (Ind. Ct. App. 2012). "The statute seeks to help distinguish law

enforcement officers from those individuals on our highways who, for illicit purposes,

12

impersonate law enforcement officers." Id. Evidence obtained in an unlawful arrest may be excluded upon proper motion by the defendant. State v. Caplinger, 616 N.E.2d 793, 795 (Ind. Ct. App. 1993) (citing Pawloski v. State, 269 Ind. 350, 380 N.E.2d 1230 (1978)).

We observe that Porter's motion to suppress did not mention Ind. Code § 9-30-2-2. At the hearing on Porter's motion to suppress, his counsel stated:

> I would note just as a side note, I don't know if it's a really fair criticism, I didn't hear that the vehicle, his vehicle was fully marked, I also didn't hear that he was in – or that he was in full uniform. So I, I don't know that they've actually technically if you (indecipherable) I don't know that they've proved on those grounds but just being genuine, the real issue here is the one we presented about the license plate light not justifying the stop.

Transcript at 39. Based upon these statements, it is unclear whether Porter's counsel was objecting to the admission of the evidence based upon Ind. Code § 9-30-2-2 or whether he waived the issue. See 1A I.L.E. Appeals § 46 (2013) ("[A]n objection sufficient to preserve error on appeal must point out the ground or grounds for the objection in such a manner as to advise the court and the adverse party so that the ruling may be made understandingly and the objection obviated if possible."). Moreover, even assuming that Porter sufficiently objected on this basis at the hearing, at the trial, when discussing Officer Montgomery's testimony from the hearing in which Officer Montgomery identified Porter as the driver of the vehicle, Porter's counsel stipulated that Officer Montgomery's testimony would be admitted for purposes of the trial subject to the objection under Article 1, Section 11, and the Fourth Amendment. However, Porter's counsel did not object under Ind. Code § 9-30-2-2. Under the circumstances, we

13

conclude that Porter waived this issue. See Hollowell v. State, 753 N.E.2d 612, 615-616 (Ind. 2001) ("Absent either a ruling admitting evidence accompanied by a timely objection or a ruling excluding evidence accompanied by a proper offer of proof, there is no basis for a claim of error.") (citing Ind. Evidence Rule 103(a)); Wright v. State, 593 N.E.2d 1192, 1194 (Ind. 1992) ("When the trial court denies a motion to suppress evidence or takes the motion under advisement, the moving party must renew his objection to admission of the evidence at trial. If the moving party does not object to the evidence at trial, then any error is waived. Alleged error likewise is waived if an appellant states one ground at trial and later states another ground on appeal.") (internal citations omitted), cert. denied, 506 U.S. 1001, 113 S. Ct. 605 (1992), abrogated on other grounds by Fajardo v. State, 859 N.E.2d 1201, 1206-1207 (Ind. 2007).

II.

The next issue is whether the court exceeded statutorily prescribed limits when it suspended Porter's driving privileges for life. The State concedes that "[a]s a result of the conversion of [Porter's] most recent felony conviction, [Porter] was subject only to a ten-year suspension at the time of his sentencing in this case." Appellee's Brief at 5. In discussing a reserved question of law, this court has previously held that "entering a judgment of conviction for a class A misdemeanor pursuant to Indiana Code section 35-38-1-1.5 for an offense under Indiana Code section 9-30-10-16 removes the lifetime forfeiture of a defendant's driving privileges." State v. Vankirk, 955 N.E.2d 765, 769 (Ind. Ct. App. 2011), trans. denied. Thus, we conclude that Porter's driving privileges were no longer suspended for life at the time of the sentencing hearing. Accordingly, we

14

turn our attention to whether the trial court had the authority to impose a lifetime suspension for the present offense.

To the extent that this case rests upon statutory interpretation, our review is *de novo*. See Gardiner v. State, 928 N.E.2d 194, 196 (Ind. 2010). Penal statutes should be construed strictly against the State and ambiguities should be resolved in favor of the accused. Merritt v. State, 829 N.E.2d 472, 475 (Ind. 2005). At the same time, however, statutes should not be narrowed so much as to exclude cases they would fairly cover. Id. Also, we assume that the language in a statute was used intentionally and that every word should be given effect and meaning. Id. We seek to give a statute practical application by construing it in a way favoring public convenience and avoiding absurdity, hardship, and injustice. Id. Statutes concerning the same subject matter must be read together to harmonize and give effect to each. Id. "The judicial function is to apply the laws as enacted by the legislature." Moore v. State, 949 N.E.2d 343, 345 (Ind. 2011).

Both parties point to Ind. Code §§ 9-30-10-16 and 17. Ind. Code § 9-30-10-16 is titled "Operating a motor vehicle while privileges are suspended; Class D felony; Class A misdemeanor," and provides:

(a)     A person who operates a motor vehicle:

    (1)     while the person's driving privileges are validly suspended under this chapter or IC 9-12-2 (repealed July 1, 1991) and the person knows that the person's driving privileges are suspended; or

    (2)     in violation of restrictions imposed under this chapter or IC 9-12-2 (repealed July 1, 1991) and who knows of the existence of the restrictions;

commits a Class D felony.

15

(c) *In addition to any criminal penalty, a person who is convicted of a felony under subsection (a) forfeits the privilege of operating a motor vehicle for life.* However, if judgment for conviction of a Class A misdemeanor is entered for an offense under subsection (a), the court may order a period of suspension of the convicted person's driving privileges that is in addition to any suspension of driving privileges already imposed upon the person.

(Emphasis added). Ind. Code § 9-30-10-17 is titled "Operating motor vehicle while privileges are forfeited for life; Class C felony," and provides in its entirety: "A person who operates a motor vehicle after the person's driving privileges are forfeited for life under section 16 of this chapter, IC 9-4-13-14 (repealed April 1, 1984), or IC 9-12-3-1 (repealed July 1, 1991) commits a Class C felony."

Porter argues that "[b]eyond the rule of construction that places specific statutes ahead of general ones, when a conflict arises over the question of imposing a harsher penalty or a more lenient one, the longstanding Rule of Lenity should be applied." Appellant's Brief at 8. He maintains that he was convicted under Ind. Code § 9-30-10-17, that the statute does not empower the trial court to impose any license suspension, and requests that we vacate his lifetime suspension.

The State concedes that Ind. Code § 9-30-10-17 is silent on imposition of a lifetime suspension, but argues that "the lifetime suspension is an element of the offense under Indiana Code § 9-30-10-17," and that "[i]t would be incongruous in such a case if the court were then directed by the statute to do that which has already been proven beyond a reasonable doubt to have already been done by a previous court." Appellee's Brief at 6. The State observes that the court found sufficient evidence to convict Porter

16

of Count I but dismissed the count based upon double jeopardy concerns. The State contends that "[i]f a court would be authorized to impose a sanction on a conviction of a lesser offense, that authorization should not be lost simply because the defendant was convicted of a more severe crime that included the lesser offense." Id. at 7. The State also argues that we should hold that the legislature could not have intended for a court to be powerless to reimpose a lifetime suspension after a conviction for driving after lifetime suspension when that suspension has been lifted between the commission of the offense and the sentencing of the defendant.

Trial courts have broad discretion in sentencing, but must act within statutorily prescribed limits. Laux v. State, 821 N.E.2d 816, 818 (Ind. 2005). Ind. Code § 9-30-10-17 does not provide for a lifetime license suspension. Mindful that penal statutes should be construed strictly against the State, that ambiguities should be resolved in favor of the accused, and that the judicial function is to apply the laws as enacted by the legislature, we conclude that the trial court exceeded statutory authority and improperly suspended Porter's driving privileges for life.[6] See id. at 818-819 (vacating a no-contact order imposed by the court where the sentencing statutes by their terms did not authorize imposition of a no-contact order as part of an executed sentence); Barnett v. State, 414 N.E.2d 965, 966 (Ind. Ct. App. 1981) (holding that the trial court was without the power to impose restitution as part of the sentence where the imposition of restitution is not within the sentencing statute).

---

[6] We observe that the prosecutor stated at the sentencing hearing that Porter was "now back on a ten-year license suspension . . . ." Transcript at 196.

17

CONCLUSION

For the foregoing reasons, we affirm Porter's conviction for operating a vehicle after a lifetime suspension, reverse the trial court's suspension of Porter's driving privileges for life, and remand for proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

BAILEY, J., and VAIDIK, J., concur.