**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**BRANDON E. MURPHY**
Cannon & Bruns
Muncie, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOHN R. PUGSLEY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.05A02-1306-CR-517 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE BLACKFORD SUPERIOR COURT
The Honorable J. Nicholas Barry, Judge
Cause No. 05D01-1212-FD-424

**February 25, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

John R. Pugsley appeals his convictions, following a jury trial, of possession of methamphetamine[1] as a Class D felony and possession of paraphernalia[2] as a Class A misdemeanor. On appeal, Pugsley contends that the trial court erred in admitting evidence seized without a warrant.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On December 1, 2012, during "deer firearm season," a Department of Natural Resources ("DNR") Law Enforcement Officer, Joshua Kilgore, saw a vehicle parked on County Road 300 West, near a wooded area north of County Road 500 North, in Blackford County, Indiana. When Officer Kilgore noted that no one was in the vehicle, he assumed that the occupants were hunting. As a DNR officer, Officer Kilgore is responsible for ensuring that hunters have the appropriate license and are wearing the required "hunter orange." *See* Ind. Code § 14-22-38-7 (a) (defining "hunter orange"); Ind. Code § 14-22-38-7 (c) (providing in pertinent part that a person who hunts for deer by firearm must wear hunter orange).

Officer Kilgore entered the private property and located Pugsley and his stepson. Pugsley, who was carrying binoculars and a firearm, showed Officer Kilgore his valid hunting license. Officer Kilgore, however, noted that Pugsley was wearing camouflage clothing instead of the required hunter orange and asked Pugsley about the violation. Pugsley responded that he had been wearing orange earlier, but that it must have fallen off.

---

[1] *See* Ind. Code § 35-48-4-6.1.

[2] *See* Ind. Code § 35-48-4-8.3.

2

Officer Kilgore informed Pugsley that, for safety reasons, he would be unable to continue hunting and asked Pugsley to meet him at the officer's vehicle so that a citation could be issued.

As Pugsley picked up his belongings, Officer Kilgore noticed that he made a suspicious movement with his hand, putting it behind his back. Concerned for officer safety, Officer Kilgore asked to see what was in Pugsley's hands. Pugsley showed the officer that he had a plastic bag and some note paper, which he planned to use as a transportation tag in the event he shot a deer. Officer Kilgore then noticed on the ground near where Pugsley was standing, a white-colored, ceramic or glass smoking device ("pipe"). Officer Kilgore determined from his training and experience that it was "not a pipe that you would traditionally see . . . somebody smoking tobacco out of." *Tr.* at 37. Officer Kilgore picked up the pipe, which was not covered by any other object, and saw white residue inside the bowl. When asked about the residue, Pugsley stated that it was methamphetamine, and admitted that "he had been busy that last week and just wanted to try it." *Id*. at 12. The wooded area where Officer Kilgore encountered Pugsley was private property; however, Pugsley stated that his stepson had received permission from the owner to hunt on the land.

Officer Kilgore arrested Pugsley and transported him to the Blackford County Jail. On December 3, 2012, the State charged Pugsley with Count I, Class D felony possession of methamphetamine, and Count II, Class A misdemeanor possession of paraphernalia. On January 24, 2013, Pugsley filed a motion to suppress the pipe and the incriminating statements made by Pugsley after the "illegal seizure of the pipe," on the basis that Officer

Kilgore did not have lawful authority to search and seize Pugsley's effects, *i.e.*, the pipe. *Appellant's App.* at 23-25. Following a hearing on the matter, the trial court denied Pugsley's motion, finding that Officer Kilgore seized the pipe while he was in a place he had a legal right to be, after he had stopped Pugsley for committing the infraction of failing to wear orange while hunting, and after he noticed the pipe in plain view and knew by his training that the pipe was drug paraphernalia. *Id*. at 32-35.

During trial, Pugsley objected to the admission of the pipe, raising again the issues set forth in his motion to suppress and, additionally, contending that there was an inadequate chain of custody.[3] *Tr.* at 53. Pugsley also objected to the admission of the incriminating statements he made to Officer Kilgore about the pipe. *Id*. at 42-44. The trial court overruled both of Pugsley's objections. *Id*. at 44, 53. The jury found Pugsley guilty of both counts, and Pugsley now appeals.

## DISCUSSION AND DECISION

Pugsley contends that the trial court erred by denying his motion to suppress and by overruling his objection to the introduction of the incriminating evidence at trial. Specifically, Pugsley maintains that Officer Kilgore's search and seizure of the pipe was

---

[3] Pugsley does not raise the issue of chain of custody on appeal. Instead, he focuses solely on the inadmissibility of the evidence on constitutional grounds.

made without either a search warrant or a valid exception to the search warrant requirement, in violation of the Fourth Amendment to the United States Constitution.[4] Although Pugsley initially challenged the admission of the pipe through a motion to suppress, he is now appealing from a completed trial. Therefore, the issue is "appropriately framed as whether the trial court abused its discretion by admitting the evidence at trial." *Collins v. State,* 822 N.E.2d 214, 218 (Ind. Ct. App. 2005), *trans. denied.* "When we review a trial court's ruling on the admissibility of evidence resulting from an allegedly illegal search, we do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling." *Reinhart v. State*, 930 N.E.2d 42, 45 (Ind. Ct. App. 2010) (citing *Meredith v. State,* 906 N.E.2d 867, 869 (Ind. 2009)). We also defer to the trial court's factual determinations unless clearly erroneous. *Id.* However, we consider "afresh any legal question of the constitutionality of a search or seizure." *Id.* (quoting *Meredith,* 906 N.E.2d at 869).

Pugsley claims that he had a reasonable expectation of privacy in his personal effects, including the pipe, and therefore, Officer Kilgore's seizure of the pipe was the

---

[4] In his appellate brief, Pugsley cites to his argument under the Indiana Constitution as follows:

> Indiana has its own equivalent to the Fourth Amendment in its State Constitution: Article I, Section 11. While almost identical in wording to the federal Fourth Amendment, the Indiana Constitution's Search and Seizure clause is given an independent interpretation and application. To determine whether a search or seizure violates the Indiana Constitution, courts must evaluate the reasonableness of the police conduct under the totality of the circumstances.

Nevertheless, Pugsley fails to provide an independent analysis of Article I, Section 11 of the Indiana Constitution; rather his focus is on the Fourth Amendment of the United States Constitution. Failure to make a cogent argument under Article I, Section 11 of the Indiana Constitution constitutes waiver of the issue on appeal. *See* Ind. Appellate Rule 46(A)(8); *Polk v. State*, 822 N.E.2d 239, 245 n.5 (Ind. Ct. App. 2005) (citing *West v. State,* 755 N.E.2d 173, 181 (Ind. 2001)), *trans. denied.*

product of an unconstitutional search in violation of the Fourth Amendment.[5]  The Fourth

Amendment protects persons from unreasonable searches and seizures and this protection

has been extended to the states through the Fourteenth Amendment.  *Ratliff v. State,* 770

N.E.2d 807, 809-10 (Ind. 2002) (citing U.S. Const. amend. IV; *Mapp v. Ohio,* 367 U.S.

643, 650 (1961)).  As a general rule, the Fourth Amendment prohibits warrantless searches,

but there are exceptions to the warrant requirement.  *Myers v. State*, 839 N.E.2d 1146, 1150

(Ind. 2005).

In order to implicate Fourth Amendment interests, the search must constitute a

"search" in the constitutional sense.  *Troyer v. State*, 605 N.E.2d 1183, 1184 (Ind. Ct. App.

1993), *trans. denied*.  Here, Officer Kilgore's view of the pipe did not violate the Fourth

Amendment.  As a DNR officer, Officer Kilgore is responsible for ensuring that hunters

have the appropriate license and are wearing the required "hunter orange."  *See* Ind. Code

§ 14-22-38-7 (a) (defining "hunter orange"); Ind. Code § 14-22-38-7 (c) (providing in

pertinent part that a person who hunts for deer by firearm must wear hunter orange).

Indiana Code section 14-22-39-3 provides, in pertinent part, that a conservation officer

may enter into or upon private property for the purpose of patrolling or investigating, if the

conservation officer has good reason to believe that he "will secure evidence of a violation

---

[5] The State argues that the pipe was not illegally seized under the Fourth Amendment because Pugsley had abandoned the pipe on property in which he had no expectation of privacy. *Appellee's Br.* at 7-9.  Additionally, claiming that the "plain view" and "open view" doctrines are applicable only where the search was in a constitutionally protected area, the State maintains that, here, these doctrines are inapplicable. *Appellee's Br.* at 8.  We note that while Officer Kilgore had the legal right to be on the property in question, the character of the private property remained constitutionally protected.  Furthermore, the State's position during both the suppression hearing and at trial was that the pipe was legally seized under the "plain view" doctrine. *Suppression Hr'g Tr.* at 17-18; *Tr.* at 27-28, 42-43, 58, 69, 72.  Finding that the evidence was properly admitted under the plain view doctrine, we do not address the State's abandonment argument.

of this article." [6]  Officer Kilgore had a right to be on the private property to enforce the DNR hunting laws.

Officer Kilgore's act of detaining Pugsley was legal.  Here, Officer Kilgore encountered Pugsley and noted that he was hunting without wearing hunter orange.  A person who violates the requirement to wear hunter orange commits a Class D infraction. Ind. Code § 14-22-38-7(d).  "'It is well-settled that a police officer may briefly detain a person whom the officer believes has committed an infraction or an ordinance violation." *Datzek v. State*, 838 N.E.2d 1149, 1154 (Ind. Ct. App. 2005) (quoting *Peete v. State,* 678 N.E.2d 415, 419 (Ind. Ct. App. 1997), *trans. denied*), *trans. denied.  See also* Ind. Code § 34–28–5–3. Officer Kilgore briefly and legally detained Pugsley before telling him to meet the officer at his car.  It was during this short detention that Officer Kilgore noted the pipe.

Officer Kilgore legally seized the pipe.  During Officer Kilgore's conversation with Pugsley, the officer noticed the pipe on the ground in plain view.  Under the plain view doctrine, "if police are lawfully in a position from which they view an object, if its incriminating character is *immediately apparent*, and if the officers have a lawful right of access to the object, they may seize it without a warrant."  *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993) (emphasis added) (citing *Horton v. California,* 496 U.S. 128, 136-37

---

[6] Pugsley made no claim at his suppression hearing or during trial that Officer Kilgore had violated this statute by entering the private property.  Even if he had, his claim would have failed.  The land did not belong to Pugsley; and, thus, he lacked the standing to raise the issue of whether Officer Kilgore violated the law when he entered onto private property.  *Shelton v. State*, 679 N.E.2d 499, 504 (Ind. Ct. App. 1997).

7

(1990)).[7] Noting that the pipe could have been used to smoke tobacco, Pugsley contends that Officer Kilgore could not legally seize the pipe because its incriminating nature was not immediately apparent.

In *Texas v. Brown,* 460 U.S. 730, 741 (1983), the United States Supreme Court clarified "that the use of the phrase 'immediately apparent' was very likely an unhappy choice of words, since it can be taken to imply that an unduly high degree of certainty as to the incriminatory character of evidence is necessary for an application of the 'plain view' doctrine." Instead, "the seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity." *Id.* at 741-42. Probable cause is a "flexible, common-sense standard" requiring that the facts available to an officer would warrant a man of reasonable caution in believing that an item "may be" contraband and does not require any showing that the belief is correct or even that it is more likely true than false. *Id.* at 742; *see also State v. Figgures,* 839 N.E.2d 772, 779 (Ind. Ct. App. 2005) (noting "immediately apparent" test does not mean that officer must "know" that item is contraband but only that he have probable cause to believe so; a "'practical, nontechnical' probability that incriminating evidence is involved is all that is required."), *trans. denied.*

---

[7] Pugsley maintains that "open view" analysis applies here; instead of the "plain view" analysis used by the trial court. *Appellant's Br.* at 8-9. The concept of "open view" is used in situations in which a law enforcement officer observes something from an area that is not constitutionally protected, but rather is in a place where the officer is lawfully entitled to be. *Justice v. State,* 765 N.E.2d 161, 165 (Ind. Ct. App. 2002). "In such situations, anything that is within 'open view' may be observed without having to obtain a search warrant because making such 'open view' observations do not constitute a search in the constitutional sense." *Id.* "The 'plain view' doctrine has been applied where a police officer is not searching for evidence against the accused, but nonetheless inadvertently comes across an incriminating object." *Horton v. California*, 496 U.S. 128, 135-36 (1990). While Pugsley maintains that "open view" analysis applies here, we agree with the trial court, that the facts more properly fall within "plain view" analysis.

Officer Kilgore described the pipe that he saw on the ground as being fairly long, made out of glass or a ceramic material, with a bowl on one side, and then a very long stem with a mouthpiece on the end. *Tr*. at 37. From his training and experience, Officer Kilgore determined that it was "not a pipe that you would traditionally see . . . somebody smoking tobacco out of." *Id*. The pipe's incriminating character was immediately apparent to Officer Kilgore, who picked up the pipe and saw white residue inside the bowl. When asked about the residue, Pugsley did not deny that the pipe was his nor did he claim ignorance of the contents; instead, he instantly responded that the residue was methamphetamine, and admitted that "he had been busy that last week and just wanted to try it." *Id*. at 12. Therefore, we cannot say that the trial court erred in admitting the evidence of the pipe and Pugsley's statements at trial.

Affirmed.

FRIEDLANDER, J., and BAILEY, J., concur.