ATTORNEY FOR APPELLANT
E. Thomas Kemp
Richmond, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana



# In the
# Indiana Supreme Court

No. 89S04-0808-CR-430

KERRY L. MEREDITH,

*Appellant (Defendant Below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff Below).*

Appeal from the Wayne Circuit Court, No. 89C01-0510-FB-021
The Honorable David A. Kolger, Judge

On Transfer from the Indiana Court of Appeals, No. 89A04-0703-CR-148

**May 28, 2009**

**Dickson, Justice.**

The defendant, Kerry L. Meredith, appeals his conviction for drug possession, arguing that evidence of drugs found in his vehicle should have been suppressed at trial because (1) police lacked cause to initiate a traffic stop and (2) the subsequent consented-to search of his vehicle violated his rights under Pirtle v. State, 263 Ind. 16, 323 N.E.2d 634 (1975), and Sims v. State, 274 Ind. 495, 413 N.E.2d 556 (1980). The Court of Appeals reversed. Meredith v. State, 878 N.E.2d 453 (Ind. Ct. App. 2007), *reh'g granted*, 886 N.E.2d 79 (Ind. Ct. App. 2008). We granted transfer and now affirm the conviction, concluding that police had reasonable suspicion to stop the defendant based on the unlawful display of his temporary license plate in his rear

window, and that the defendant was not in custody at the time he consented to the police search of the vehicle.

Just after midnight on an October morning in 2005, Richmond Police Officer John Lackey pulled his cruiser to a red traffic light behind a vehicle driven by the defendant. Unable to spot a license plate in the usual location, or anywhere else, Officer Lackey activated his spotlight and then observed a paper plate in the rear window, but still could not see an expiration date because of the vehicle's tinted windows. Officer Lackey initiated a traffic stop and, upon approaching the vehicle, saw the tag was valid. Officer Lackey spoke with the defendant. Prompted by his concern that the vehicle's interior smelled of alcohol, the defendant's eyes were red and bloodshot, and the defendant was excessively nervous, Officer Lackey asked the defendant to perform a breath test. The test came up negative. Officer Lackey then asked for permission to search the vehicle, and the defendant consented. Cocaine was found.

The State charged the defendant with possession of cocaine. Before trial, the defendant moved to suppress the evidence, and the trial court denied that motion following a hearing.[1] At trial the court overruled the defendant's objection to introduction of the evidence, and a jury returned a guilty verdict. We granted transfer.

In reviewing the trial court's ruling on the admissibility of evidence from an allegedly illegal search, an appellate court does not reweigh the evidence but defers to the trial court's factual determinations unless clearly erroneous, views conflicting evidence most favorably to the ruling, and considers afresh any legal question of the constitutionality of a search or seizure. Membres v. State, 889 N.E.2d 265, 268 (Ind. 2008).

**1. The Traffic Stop**

The defendant argues that the initial stop violated his Fourth Amendment rights, as the officer's stated justification for the stop—an alleged improper display of a temporary plate—was

---

[1] Neither party includes a copy of the order or the briefs in support of or opposing the motion to suppress. Thus, we rely on the contentions in the parties' briefs.

2

invalid. Because a traffic stop is a seizure under the Fourth Amendment, police may not initiate a stop for any conceivable reason, but must possess at least reasonable suspicion that a traffic law has been violated or that other criminal activity is taking place. Whren v. United States, 517 U.S. 806, 809-10, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89, 95 (1996); Delaware v. Prouse, 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660, 667 (1979); Finger v. State, 799 N.E.2d 528, 532 (Ind. 2003). An officer's decision to stop a vehicle is valid so long as his on-the-spot evaluation reasonably suggests that lawbreaking occurred. See State v. Washington, 898 N.E.2d 1200, 1205 (Ind. 2008). This discretion, however, does not extend to an officer's mistaken belief about what constitutes a violation as a matter of law. Ransom v. State, 741 N.E.2d 419, 422 (Ind. Ct. App. 2000), *trans. denied*.

Officer Lackey testified that he stopped the defendant's car solely because he suspected the vehicle was being operated in violation of Indiana's laws regarding the proper display of license plates. The question before us is thus whether the defendant's placement of his temporary plate in the vehicle's back window amounted to a traffic infraction. If it did, Officer Lackey had reasonable suspicion to execute the traffic stop.

This Court has previously considered whether placing a license plate in a vehicle's rear window contravenes Indiana's statutes governing proper display and illumination, thus justifying a traffic stop. *See* Merritt v. State, 829 N.E.2d 472 (Ind. 2005). In Merritt, this Court looked at Indiana Code § 9-18-2-26, which governs the display of license plates:

(a)  License plates shall be displayed as follows:
(1) For a motorcycle, trailer, semitrailer, or recreational vehicle, upon the rear of the vehicle.
(2) For a tractor or dump truck, upon the front of the vehicle.
(3) For every other vehicle, upon the rear of the vehicle.
(b) A license plate shall be securely fastened, in a horizontal position, to the vehicle for which the plate is issued:
(1) to prevent the license plate from swinging;
(2) at a height of at least twelve (12) inches from the ground, measuring from the bottom of the license plate;
(3) in a place and position that are clearly visible;
(4) maintained free from foreign materials and in a condition to be clearly legible; and
(5) not obstructed or obscured by tires, bumpers, accessories, or other opaque objects.

(c) The bureau may adopt rules the bureau considers advisable to enforce the proper mounting and securing of license plates on vehicles consistent with this chapter.

Ind. Code § 9-18-2-26.  This Court also looked at the application of Indiana Code § 9-19-6-4(e), which requires illumination of license plates:

(e) Either a tail lamp or a separate lamp must be placed and constructed so as to illuminate the rear registration plate with a white light and make the plate clearly legible from a distance of fifty (50) feet to the rear. A tail lamp or tail lamps, together with a separate lamp for illuminating the rear registration plate, must be wired so as to be lighted whenever the head lamps or auxiliary driving lamps are lighted.

*Id.* § 9-19-6-4(e).

We found these provisions interacted to "require that the license plate be displayed upon the rear of the vehicle, securely fastened, in a horizontal position, and also be illuminated at night by a separate white light so as to be clearly legible from fifty feet." Merritt, 829 N.E.2d at 476. And because "the defendant's license plate inserted inside the back window of his automobile was not displayed appropriately, . . . the officer's stop was proper, and . . . the trial court did not err in admitting evidence resulting from the stop." *Id.* at 475.

This case, unlike Merritt, involves the display and illumination of plates before a vehicle is permanently registered, which circumstance invokes other statutory provisions.  As we noted in Merritt, the Bureau of Motor Vehicles is authorized to issue various temporary registration permits and license plates—a temporary license plate that is valid for thirty days (§ 9-18-2-49), a thirty-one-day interim license plate (§ 9-18-26-10), a thirty-day temporary registration permit (§ 9-18-7-1), and a ninety-day temporary registration permit (§ 9-18-7-1.5)—and is also authorized to promulgate rules specifying the requirements for the proper display of these temporary tags. *Id.* at 475 n.14.

The defendant suggests his vehicle was displaying a thirty-day permit authorized by § 9-18-7-1,[2] but the record undermines this position.  Officer Lackey specifically described the

---

[2]  Section 9-18-7-1 provides as follows:

(a) A person may apply for and receive a temporary registration permit for a motor vehicle, semitrailer, trailer designed to be used with a semitrailer, or recreational vehicle.

displayed item as a "[t]emporary paper plate" of the type issued from dealer to purchaser and valid for thirty-one days. Appellant's App'x at 22, 29-30. Viewing this disputed evidence, as we must, in the light most favorable to the trial court's decision, implicates § 9-18-26-10, which governs "interim license plates."[3]

The defendant argues that this section provides no detailed guidance for displaying interim plates. He points out that, although the Bureau is authorized to write rules governing the

(b) Except as provided in section 1.5 [IC 9-18-7-1.5] of this chapter, a temporary registration permit is valid for a period of thirty (30) days from the date of issuance and authorizes the use of the motor vehicle, semitrailer, trailer designed to be used with a semitrailer, or recreational vehicle on the highways if any of the following conditions exist:
    (1) The person has purchased or otherwise obtained the vehicle in Indiana and will be titling or registering the vehicle in another state.
    (2) The person is a resident of Indiana and is intending to move to another state and the current vehicle registration or temporary permit will expire before the person moves.
    (3) The person is a resident of Indiana and the vehicle registration in another state has expired and the person has applied for an Indiana title for the vehicle.
    (4) The person is a manufacturer of semitrailers or trailers designed to be used with a semitrailer that may be leased by the manufacturer to any person, including a motor carrier, for not more than the term of the special registration permit. This subdivision does not prohibit the transportation of property on a semitrailer or trailer operating under a temporary registration permit. A copy of the lease must accompany the semitrailer or trailer.
    (5) The person owns and operates the vehicle and the person:
        (A) does not operate the vehicle as a lessor; and
        (B) moves the empty vehicle from one (1) lessee-carrier to another.
(c) The bureau shall prescribe the form of a temporary registration permit.
(d) A temporary registration permit shall be displayed on a vehicle in a manner determined by the bureau.
(e) The bureau may provide for the bulk issuance of temporary registration permits to manufacturers for the purpose of subsection (b)(4).
(f) Subject to IC 9-25-1-2, a temporary registration permit may be obtained under this section if the owner of the vehicle provides proof of financial responsibility in the amounts specified under IC 9-25 in a form required by the bureau.

[3] As of the date of the alleged offense, Section 9-18-26-10 provided as follows:

(a) The bureau may issue an interim license plate to a dealer or manufacturer who is licensed and has been issued a license plate under section 1 [IC 9-18-26-1] of this chapter.
(b) The bureau shall prescribe the form of an interim license plate issued under this section. However, a plate must bear the assigned registration number and provide sufficient space for the expiration date as provided in subsection (c).
(c) Whenever a dealer or manufacturer sells a motor vehicle, the dealer or manufacturer may provide the buyer with an interim license plate. The dealer shall, in the manner provided by the secretary of state, affix on the plate in numerals and letters at least three (3) inches high the date on which the interim license plate expires.
(d) An interim license plate authorizes a motor vehicle owner to operate the vehicle for a maximum period of thirty-one (31) days after the date of delivery of the vehicle to the vehicle's owner or until a regular license plate is issued, whichever occurs first.
(e) A motor vehicle that is required by law to display license plates on the front and rear of the vehicle is only required to display a single interim plate.

display of such permits, it has done so only for ninety-day temporary registration permits.[4] From this, he argues that the requirements listed in <u>Merritt</u> have no bearing on the temporary plate at issue here, and that nothing required that it be viewable and illuminated at night, or that the expiration date be viewable from any particular distance. Appellant's Br. at 8-10. He thus urges that, while Officer Lackey's suspicion was justifiably raised when he saw no license plate on the vehicle, once he saw the valid interim plate in the rear window, he could not reasonably suspect the defendant was in violation of any statutory provision.

The State concedes that rulemaking authority has not been exercised here, except to specify that a vehicle required to display both front and rear permanent plates need only display one interim license plate. *See* Ind. Code § 9-18-26-10(e). We agree with the State, however, that the statute for interim license plates fails to alter or amend the required placement and display of license plates set forth in §§ 9-18-2-26 and 9-19-6-4(e). Section 9-18-2-26 governs the display of "license plates" without discriminating between interim and regular plates. Section 9-19-6-4 requires that all "registration plate[s]" be illuminated so as to be visible from a distance of fifty feet. As explained in <u>Merritt</u>, these provisions "require that the license plate be displayed upon the rear of the vehicle, securely fastened, in a horizontal position, and also be illuminated at night by a separate white light so as to be clearly legible from fifty feet." 829 N.E.2d at 476. Placing "a license plate on the *inside* of the back window clearly does not satisfy the requirement that license plates be displayed '*upon* the rear of the vehicle.'" *Id.* at 475. Likewise, the defendant's license plate was not illuminated by a separate white light so that it was clearly legible from fifty feet. Officer Lackey was therefore justified in stopping the defendant.

The rule of lenity requires that penal statutes be construed strictly against the State and any ambiguities resolved in favor of the accused, <u>State v. Turner</u>, 567 N.E.2d 783, 783-34 (Ind. 1991), but statutes "are not to be overly narrowed so as to exclude cases they fairly cover," <u>Cape v. State</u>, 400 N.E.2d 161, 164 (Ind. 1980). As neither the statutes nor regulations differentiate the display and illumination requirements of permanent and interim plates, we hold that under existing unambiguous law a license plate—be it temporary or permanent—must be mounted and

---

[4] The single rule promulgated by the Bureau provides that ninety-day temporary registration permits issued under § 9-18-7-1.5 "shall be displayed in the same manner as a standard license plate." 140 Ind. Admin. Code 2-3-6 (2004).

illuminated as provided by Indiana Code §§ 9-18-2-26 and 9-19-6-4. This Court is mindful that the current common practice is for dealerships to issue paper or cardboard plates to customers, and that exposing such a document to the elements appears impractical and inconvenient, but as neither the statutes nor regulations differentiate between the display requirements for a permanent and interim plate, the interim plate must be mounted in the same fashion as the permanent plate. Any other method of display may give rise to reasonable suspicion for law enforcement officers to initiate a traffic stop to ascertain whether the display complies with all statutory requirements.

As to this defendant, Officer Lackey had, by virtue of the interim plate being both unilluminated and placed incorrectly, reasonable suspicion to pull over the defendant's vehicle for a traffic stop. Thus, the initial stop due to the suspected license plate display violation was proper and the trial court did not err in refusing to suppress the resulting evidence on this basis.

## 2. Consent to Search of the Vehicle

The defendant's second claim is that the subsequent search of his vehicle was illegal because his consent was invalid. Under Article 1, § 11 of the Indiana Constitution, "a person who is asked to give consent to search while in police custody is entitled to the presence and advice of counsel prior to making the decision whether to give such consent." Pirtle, 263 Ind. at 29, 323 N.E.2d at 640; Sims, 274 Ind. at 499-500, 413 N.E.2d at 558.

It is undisputed that Officer Lackey did not issue this advisement. *See* Appellant's App'x at 23. Whether the evidence must be suppressed turns on whether the defendant was in custody at the time consent was requested. In distinguishing between custodial encounters (where Pirtle and Sims apply) and non-custodial encounters (where they do not), the "ultimate inquiry" is whether there was a "formal arrest" or a "'restraint on freedom of movement' of the degree associated with a formal arrest." Luna v. State, 788 N.E.2d 832, 833 (Ind. 2003) (quoting California v. Beheler, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275, 1279 (1983)). In answering this question, courts consider all circumstances surrounding the encounter and "largely appl[y] an objective test asking whether a reasonable person under the same

7

circumstances would believe that she was under arrest or not free to resist the entreaties of the police." Jones v. State, 655 N.E.2d 49, 55 (Ind. 1995).

One factor courts have considered is whether a reasonable person in the defendant's position would feel free to leave, Campos v. State, 885 N.E.2d 590, 601 (Ind. 2008), but the law is clear that in the context of an investigatory stop a person is, at least temporarily, not free to leave. Established law allows an officer making a traffic stop to detain a person upon reasonable suspicion of criminal activity and to ask questions to determine identity and verify or disprove the officer's suspicions. Washington, 898 N.E.2d at 1204 (citing Berkemer v. McCarty, 468 U.S. 420, 439-40, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317, 334 (1984)). A person stopped by police, while "seized" and momentarily not free to go, is ordinarily not considered in custody. Clarke v. State, 868 N.E.2d 1114, 1118-19 (Ind. 2007); Jones, 655 N.E.2d at 55.

Pirtle and its progeny police the line between ordinary investigative detentions and full-blown custodial interrogations by examining the circumstances for objectively overpowering, coercive, or restraining police behavior, such that the facts demonstrate "a degree associated with a formal arrest." Melton v. State, 705 N.E.2d 564, 566 (Ind. Ct. App. 1999) (internal quotation marks omitted). A non-exhaustive list of relevant factors our cases have identified includes: whether the defendant was read his Miranda rights, handcuffed, restrained in any way, or told that he was a suspect in a crime, *e.g.*, Torres v. State, 673 N.E.2d 472, 474 (Ind. 1996); how vigorous was the law enforcement interrogation, *e.g.*, Sellmer v. State, 842 N.E.2d 358, 363-65 (Ind. 2006); whether police suggested the defendant should cooperate, implied adverse consequences for noncooperation, or suggested that the defendant was not free to go about his business, *e.g.*, *id.*; Clarke, 868 N.E.2d at 1120-21; and the length of the detention, *e.g.*, Cooley v. State, 682 N.E.2d 1277, 1279 (Ind. 1997).

Here, the record reveals nothing more than a conventional traffic stop. Viewed most favorably to the trial court's decision, the record shows only that Officer Lackey stopped the defendant for a traffic infraction (permitted in: Lockett v. State, 747 N.E.2d 539, 543 (Ind. 2001)); asked the defendant for his license (permitted in: *id.* at 541); based on his perception of the smell of alcohol and the defendant's red eyes and nervousness, asked the defendant to

8

perform a sobriety test (permitted in: *id.*; <u>Wilson v. State</u>, 745 N.E.2d 789, 791 (Ind. 2001)); and then asked for consent to search the vehicle (permitted in: <u>Clarke</u>, 868 N.E.2d at 1120-21). Absent anything in the record pointing the other way, "[t]reatment of this sort cannot fairly be characterized as the functional equivalent of formal arrest." <u>Berkemer</u>, 468 U.S. at 442. *Compare, e.g.*, <u>Conwell v. State</u>, 714 N.E.2d 764 (Ind. Ct. App. 1999) (finding detained motorist in custody when officer immediately ordered driver out of car, handcuffed him, and placed him in a choke hold).

Officer Lackey testified at the suppression hearing that he himself believed the defendant "wasn't free to go." Appellant's App'x at 23. Nevertheless, "[w]hether a person was in custody depends upon objective circumstances, not upon the subjective views of the interrogating officers or the subject being questioned." <u>Gauvin v. State</u>, 878 N.E.2d 515, 520 (Ind. Ct. App. 2007), *trans. denied.* The record reveals no clues that Officer Lackey conveyed this belief to the defendant. The only inference we can draw from this record is simply that, had the defendant refused the search, Officer Lackey would have done no more than issue a citation for the license plate violation, and the defendant would have then been free to leave. *See* <u>Washington</u>, 898 N.E.2d at 1204 ("[T]he detainee is not obligated to respond, and 'unless the detainee's answers provide the officer with probable cause to arrest him, he must then be released.'" (quoting <u>Berkemer</u>, 468 U.S. at 439-40)); *see also* <u>Jones</u>, 655 N.E.2d at 56.

The defendant was not in custody, and thus no <u>Pirtle</u>/<u>Sims</u> warning was necessary. The trial court did not err in refusing to exclude the evidence on this basis.

**Conclusion**

We affirm the defendant's conviction.

Shepard, C.J., and Sullivan and Boehm, JJ., concur. Rucker, J., dissents with separate opinion.

9

**Rucker, J., dissenting.**

As the majority correctly phrases the issue, "[t]he question before us is thus whether the defendant's placement of his temporary plate in the vehicle's back window amounted to a traffic infraction." Slip op. at 3. The majority says yes, reasoning that the statute governing permanent metal plates applies to temporary plates as well. Ind. Code § 9-18-2-26.

The Legislature has authorized the Bureau of Motor Vehicles to promulgate rules for the placement of temporary plates, and the bureau has not done so. But this is not because the bureau necessarily intends that the rules for permanent license plates should apply. If that were so, then the bureau would have no reason to require ninety-day plates to be "displayed in the same manner as a standard license plate." 140 Ind. Admin. Code 2-3-6. Unlike temporary plates that are made of paper or cardboard, see Ind. Code § 9-18-2-49(a), ninety-day plates are "manufactured from the same material as a license plate issued under IC 9-18-2," Ind. Code § 9-18-7-1.5. By creating a rule for one type of plate, the bureau has left open the issue for other temporary plates.

At the very least the Motor Vehicle Statutes are ambiguous on the question of whether temporary paper tags should be displayed in the same manner as permanent metal plates. And "[p]enal statutes should be construed strictly against the State and ambiguities should be resolved in favor of the accused." Merritt v. State, 829 N.E.2d 472, 475 (Ind. 2005).

A drive down nearly any Indiana street on any given day will reveal Hoosier motorists applying old-fashioned common sense: attaching temporary paper tags to the inside of the back window in order protect them from deterioration by the elements. By today's decision the majority has transformed law-abiding citizens into traffic offenders. This is patently wrong in my view; therefore I dissent.