**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**JARED MICHEL THOMAS**
Evansville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELLEN H. MEILAENDER**
Deputy Attorney General
Indianapolis, Indiana

FILED
Jul 25 2014, 9:25 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KELSEY LYNN WILSON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 82A01-1310-CR-454 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE VANDERBURGH SUPERIOR COURT
The Honorable Robert J. Pigman, Judge
Cause No. 82D02-1205-FA-476

**July 25, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

## Case Summary

Kelsey Lynn Wilson appeals her conviction for class A felony dealing in cocaine following a jury trial. The sole restated issue presented for our review is whether the trial court abused its discretion when it admitted evidence obtained during a consensual search of Wilson's car. Finding no abuse of discretion, we affirm.

## Facts and Procedural History

The facts most favorable to the trial court's admission of evidence indicate that, on April 27, 2012, Vanderburgh County Sheriff's Deputy David Eads was conducting seatbelt enforcement patrol on Washington Avenue in Evansville. Deputy Eads observed a blue Buick in which the driver, later identified as Wilson, was driving unrestrained by a safety belt. Deputy Eads decided to initiate a traffic stop of Wilson's vehicle due to the observed infraction. Deputy Eads pulled his fully-marked police vehicle behind Wilson's vehicle and activated his emergency lights. Wilson pulled off the road and stopped her vehicle in a parking lot. When Deputy Eads exited his vehicle, he noticed that there was a male passenger in the front seat of Wilson's vehicle and that Wilson and the male appeared to be talking. As Deputy Eads approached Wilson's vehicle, the passenger "[flung] the door open and [took] off running." Tr. at 21. The passenger took off running so fast that he ran out of his shoes. Deputy Eads chased the passenger, but eventually lost track of him, and returned to Wilson's car. Deputy Eads asked Wilson who the passenger was, and Wilson claimed that she did not know the man and that she had picked him up at a gas station. Deputy Eads did not believe that Wilson was being truthful about not knowing the passenger.

2

Deputy Eads asked Wilson for her driver's license and asked her to step out of the car to talk. Deputy Eads also asked Wilson for permission to search her car to see if the passenger had left anything that might help identify him. In past experiences, Deputy Eads had found things inside a vehicle that had helped him identify a fleeing person. Wilson gave Deputy Eads consent to search her car. As Deputy Eads spoke to Wilson, she began looking at her cellphone. Deputy Eads confiscated her phone and placed it on the hood of her car. He did not want Wilson communicating with the fleeing passenger and possibly arranging to pick him up. After obtaining her consent, but before conducting a search, Deputy Eads ran Wilson's driver's license information, which indicated that Wilson's license was suspended. Deputy Eads placed Wilson under arrest. During a subsequent search of Wilson's vehicle, officers discovered two baggies containing approximately twenty-two grams of a white powdery substance inside the center console. Field tests indicated that the substance was cocaine. Also during the search, officers found documents bearing the name "Howard Phipps" on them. In addition, Wilson has the name "Howard" tattooed on her chest. When Deputy Eads encountered Howard Phipps later that evening, Deputy Eads opined that he was the same person whom he had seen flee from Wilson's vehicle. Lab tests confirmed that the substance in one of the bags was cocaine with a net weight of 12.33 grams.

The State charged Wilson with class A felony dealing in cocaine. Thereafter, Wilson filed a motion to suppress evidence obtained as a result of the search of her vehicle. Following a hearing, the trial court denied the motion. A jury trial began on August 12, 2013. During trial, Wilson renewed her objection to evidence obtained as a result of the

search of her vehicle, and the trial court overruled the objection.  At the conclusion of the trial, the jury found Wilson guilty as charged.  This appeal ensued.

**Discussion and Decision**

Although Wilson asserts that the trial court erred when it denied her pretrial motion to suppress evidence, we note that she now appeals following a jury trial.  Therefore, the issue before us is whether the trial court abused its discretion in admitting the evidence at trial.  *Lindsey v. State*, 916 N.E.2d 230, 238 (Ind. Ct. App. 2009), *trans. denied* (2010).  "A trial court has broad discretion in ruling on the admission or exclusion of evidence." *Palilonis v. State*, 970 N.E.2d 713, 726 (Ind. Ct. App. 2012), *trans. denied*.  "An abuse of discretion occurs when the trial court's ruling is clearly against the logic, facts, and circumstances presented."  *Id*.  When reviewing the admissibility of evidence, we do not reweigh evidence, and we consider conflicting evidence most favorable to the trial court's ruling.  *Meredith v. State*, 906 N.E.2d 867, 869 (Ind. 2009).  We also defer to the trial court's factual determinations unless clearly erroneous.  *Id*.  However, we consider "afresh any legal question of the constitutionality of a search or seizure."  *Id*.

We initially note that Wilson does not challenge the propriety of the initial traffic stop based on her alleged seatbelt infraction.  It is well settled that a traffic stop is valid under the Fourth Amendment if it is based on an observed traffic violation.  *Killebrew v. State*, 976 N.E.2d 775, 779 (Ind. Ct. App. 2012), *trans. denied* (2013).  Our supreme court has determined that police officers may initiate a traffic stop based upon reasonable suspicion that the occupants in the front seat of a vehicle are not wearing seat belts.  *Baldwin v.*

4

*Reagan*, 715 N.E.2d 332, 337 (Ind. 1999). Such reasonable suspicion exists where the officer observes the driver or passenger under circumstances that would cause an ordinarily prudent person to believe that the driver or passenger is not wearing a seat belt as required by law. *Id*.

Despite the validity of the initial stop, Wilson complains that Deputy Eads was prohibited by Indiana statutory law from subsequently requesting her consent to search the vehicle. We disagree.

Indiana Code Section 9-19-10-3.1(a), part of the Seatbelt Enforcement Act, provides in relevant part that "a vehicle may be stopped to determine compliance with this chapter. However, a vehicle, the contents of a vehicle, the driver of a vehicle, or a passenger in a vehicle may not be inspected, searched, or detained solely because of a violation of this chapter." While this language does not explicitly prohibit a police officer from requesting a consent to search following a seatbelt violation, in *State v. Richardson*, 927 N.E.2d 379, 383-83 (Ind. 2010), our supreme court noted that the *Baldwin* court had previously stated that this statutory language could be read to prohibit a police officer making a seatbelt stop from even asking the driver for consent to search the vehicle or its occupants. *Id*. (citing *Baldwin*, 715 N.E.2d at 339 n.8). Notwithstanding this statutory interpretation prohibiting officers from determining anything other than the seatbelt violation upon a vehicle stop, the *Richardson* court reasoned that "the police are not ousted of authority to investigate further if the circumstances warrant" and as long as the police behavior can be explained as not "solely because of a violation" of the seatbelt law. *Id*. In other words, circumstances must arise after

5

the stop that independently provide the officer with reasonable suspicion justifying further inquiry above and beyond the seatbelt violation. *Id.* at 384 (citing *State v. Morris*, 732 N.E.2d 224, 228 (Ind. Ct. App. 2000)). Reasonable suspicion must exist such that the facts known to the officer, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe that criminal activity has or is about to occur. *Id.*

Here, viewing the facts most favorable to the trial court's admission of evidence, circumstances arose after the initial stop of Wilson's vehicle that independently provided Deputy Eads with reasonable suspicion justifying further inquiry. After initiating the traffic stop in his fully-marked police vehicle, Deputy Eads approached Wilson's vehicle. Before Deputy Eads had even reached Wilson to discuss the alleged seatbelt violation, her male passenger suddenly flung the door open and took off running so fast that he ran out of his shoes. Contrary to Wilson's arguments, her passenger's flight gave Deputy Eads reasonable suspicion to justify further investigation above and beyond the mere seatbelt violation. Indeed, our supreme court has held that flight from a police officer generates suspicious behavior which warrants an investigatory stop. *Platt v. State*, 589 N.E.2d 222, 226 (Ind. 1992). Because Deputy Eads was unable to locate the fleeing passenger, he returned to Wilson to ask her the identity of her passenger. Although Wilson denied knowing the fleeing male, Deputy Eads did not believe Wilson to be credible in this regard. Deputy Eads requested Wilson's consent to search the vehicle to see if the passenger had left any identification behind. Wilson gave her consent.

6

On these facts, we conclude that further investigation above and beyond the seatbelt violation was warranted as a result of independent circumstances that arose after the initial stop, and therefore Deputy Eads was justified in requesting Wilson's consent to search her vehicle. In short, his request for consent to search cannot be said to have been "solely because of a violation" of the seat belt law. *See Richardson*, 927 N.E.2d at 383-84. Accordingly, Wilson has demonstrated no impropriety regarding Deputy Eads's request for consent.

Wilson maintains that her consent was invalid because Deputy Eads failed to advise her of her right to the presence and advice of counsel prior to requesting her consent to search her vehicle. In *Pirtle v. State*, 263 Ind. 16, 29, 323 N.E.2d 634, 640 (1975), our supreme court held that a person held in police custody is entitled to the presence and advice of counsel prior to consenting to a search and that the right, if waived, must be explicitly waived. Thus, the threshold question when considering *Pirtle* rights is whether the defendant was in custody when she was asked to consent. *See Garcia-Torres v. State*, 949 N.E.2d 1229, 1238 (Ind. 2011).

To determine whether a defendant was in custody when consent was requested, courts consider all circumstances surrounding the encounter. *Meredith*, 906 N.E.2d at 873. "Custody is determined by an objective test: whether reasonable persons under the same circumstances would believe they were in custody or free to leave." *Campos v. State*, 885 N.E.2d 590, 601 (Ind. 2008). "A person stopped by police, while 'seized' and not momentarily free to go, is ordinarily not considered in custody." *Meredith*, 906 N.E.2d at

7

873. "*Pirtle* and its progeny police the line between ordinary investigative detentions and full-blown custodial interrogations by examining the circumstances for objectively overpowering, coercive, or restraining police behavior, such that the facts demonstrate 'a degree associated with a formal arrest.'" *Id.* at 873-74 (quoting *Melton v. State*, 705 N.E.2d 564, 566 (Ind. Ct. App. 1999)). A "non-exhaustive list" of relevant factors includes: (1) whether the defendant was read her *Miranda* rights, handcuffed, restrained in any way, or told that she was a suspect of a crime; (2) whether police suggested the defendant should cooperate, implied adverse consequences for noncooperation, or suggested that the defendant was not free to go about her business; (3) and the length of the detention. *Id.* at 874 (citations omitted).

Here, at the time Deputy Eads asked Wilson for her consent, she was the subject of little more than a conventional traffic stop. As already stated, Deputy Eads observed Wilson driving unrestrained by a seatbelt and initiated a traffic stop. Wilson pulled into a parking lot and Deputy Eads pulled in behind her. Before Deputy Eads had the opportunity to speak to Wilson, her front-seat passenger jumped out of the vehicle and took off running. Deputy Eads pursued the passenger to no avail. While waiting for Deputy Eads to return, Wilson got in and out of her vehicle numerous times. When Deputy Eads returned, Wilson was sitting in the vehicle with the door open. Deputy Eads spoke to Wilson and she denied knowing the identity of the passenger. Deputy Eads asked Wilson to step out of the car to talk and asked her for her license in order to deal with the traffic infraction. *See id.* (asking for driver's

8

license permitted as part of investigatory stop). During this interaction, he also asked Wilson for consent to search the vehicle. Wilson consented.

These facts, viewed most favorably to the trial court's decision, cannot fairly be characterized as "the functional equivalent of a formal arrest." *See id.* While at the time her consent was requested, Wilson was, at least temporarily, not free to leave, we cannot say that Deputy Eads engaged in objectively overpowering, coercive, or restraining police behavior such that a reasonable person in Wilson's same situation would not have believed that she was free to resist the entreaties of the police. Although Deputy Eads held her driver's license, Wilson was not handcuffed or restrained in any way and there is nothing in the record to indicate that Deputy Eads suggested that Wilson should consent to a search of the vehicle or implied adverse consequences for her noncooperation. Accordingly, Wilson was not in custody at the time her consent was requested, and no *Pirtle* advisement was necessary.[1]

Based upon the foregoing, we conclude that the trial court did not abuse its discretion in admitting evidence obtained during the search of Wilson's vehicle. We affirm her conviction for class A felony dealing in cocaine.

Affirmed.

BAKER, J., and BARNES, J., concur.

---

[1] Wilson briefly asserts that her consent to search "was given while being unlawfully held in custody" because she never committed an "arrestable offense." Appellant's Br. at 11-12. As we stated above, Wilson was neither in custody nor under arrest when she gave her consent. We agree with the State that the validity of Wilson's subsequent arrest for driving while suspended is irrelevant to the validity of her prior consent.