## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 09 2018, 11:00 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Barbara J. Simmons
Oldenburg, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Christian Hicks,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

February 9, 2018

Court of Appeals Case No.
49A04-1708-CR-1796

Appeal from the Marion Superior Court

The Honorable Linda E. Brown, Judge

Trial Court Cause No.
49G10-1704-CM-13966

**Bailey, Judge.**

# Case Summary

[1] Christian Hicks ("Hicks") appeals his conviction, following a bench trial, for possession of marijuana, as a Class B misdemeanor.[1] The sole issue he raises on appeal is whether the trial court erred in denying his motion to suppress on the grounds that the police failed to advise him of his rights under *Pirtle* before obtaining his consent to search his backpack.

[2] We affirm.

# Facts and Procedural History

[3] At approximately 1:20 a.m. on April 16, 2017, Officer Daniel Birt ("Officer Birt") with the Butler University Police Department was on patrol when he received a dispatch about a "suspicious … black male with dreadlocks, gray shirt, blue jeans on a bicycle looking in vehicles." Tr. at 4. The caller who reported the suspicious activity stated that he saw the suspect "up around his garage[,]" "north on Boulevard [Place]." *Id*. at 4 - 5. Four law enforcement units, including Officer Birt, began looking for the suspect. When Officer Birt drove to the location, he saw a man later identified as Hicks heading north on Boulevard Place. Hicks wore a gray shirt, blue jeans, and was on a bicycle, thus matching the description of the suspect.

---

[1] Ind. Code § 35-48-4-11(a)(1).

[4]     When Officer Birt proceeded closer, he observed that the bicycle Hicks was riding did not have a rear taillight or a headlight. Officer Birt decided to conduct a stop of Hicks based on those infractions and also because he was "a suspect for … possible vehicle break-ins." *Id*. at 5. Officer Birt activated the emergency lights of his marked police car and pulled up in front of Hicks. He then exited his vehicle and asked Hicks to stop. Three other officers soon arrived at the scene in two additional police vehicles with emergency lights activated. Officer Birt then approached Hicks and asked him for his identification. Hicks did not have any identification but verbally identified himself by providing his name and date of birth.

[5]     Officer Birt radioed the information he received from Hicks to dispatch, and dispatch informed him that "there was a possible warrant hit" for Hicks. *Id*. at 6. Officer Birt then asked Hicks for his social security number, which Hicks provided and which Officer Birt relayed to dispatch. While waiting for confirmation from dispatch of a warrant on Hicks, Officer Birt observed that Hicks was wearing a backpack and asked him if he could search it. Hicks handed his backpack to Officer Birt, who placed it on the hood of his vehicle and searched it. Inside the backpack, Officer Birt found a metal tin containing a baggie with 9.29 grams of marijuana, a silver grinder, a small spoon, a stone pipe, lighters, and papers.

[6]     Immediately after Officer Birt found the items in Hicks' backpack, dispatch confirmed that there was a warrant for Hicks' arrest out of Hendricks County. Approximately ten to fifteen minutes passed from the time the officer provided

dispatch with Hicks' social security number and the time dispatch confirmed the warrant. Officer Birt then handcuffed Hicks and placed him into his patrol vehicle.

[7]     The State charged Hicks with possession of marijuana, as a Class B misdemeanor, and possession of paraphernalia, as a Class C misdemeanor.[2] Hicks' had a bench trial on July 17, 2017 at which he moved to suppress "any contents of the search of [his] backpack as he was in police custody and was not advised of his *Pirtle* rights before being asked to consent to the search of the backpack which would be in violation of Article One, Section 11 of the Indiana Constitution." Tr. at 9-10. The trial court denied Hicks' motion, and Hicks lodged a continuing objection. The court found Hicks guilty of Class B misdemeanor possession of marijuana, and it dismissed the Class C misdemeanor possession of paraphernalia upon Hicks' Trial Rule 41(b) motion. The court sentenced Hicks to 180 days in the county jail, with 174 days suspended and credit time of six days. This appeal ensued.

# Discussion and Decision

[8]     Hicks appeals the denial of his motion to suppress the evidence obtained in the search of his backpack. A trial court has broad discretion to rule on the admissibility of evidence. *Thomas v. State*, 81 N.E.3d 621, 624 (Ind. 2017).

---

[2] I.C. § 35-48-4-8.3(b)(1).

Generally, evidentiary rulings are reviewed for an abuse of discretion and reversed when admission is clearly against the logic and effect of the facts and circumstances. *Id.* However, when a challenge to an evidentiary ruling is predicated on the constitutionality of a search or seizure of evidence, it raises a question of law that is reviewed de novo. *Id.* The State has the burden to demonstrate that the measures it used to seize information or evidence were constitutional. *State v. Rager*, 883 N.E.2d 136, 139 (Ind. Ct. App. 2008).

[9] Hicks contends that the search of his backpack violated his rights under Article 1, Section 11 of the Indiana Constitution because Officer Birt did not advise him of his *Pirtle* rights prior to obtaining his consent to the search. In *Pirtle v. State*, 323 N.E.2d 634, 640 (Ind. 1975), our Supreme Court held that, under Article 1, Section 11, "a person who is asked to give consent to search while in police custody is entitled to the presence and advice of counsel prior to making the decision whether to give such consent."[3] It is undisputed that Officer Birt did not advise Hicks of his *Pirtle* (or *Miranda*) rights prior to obtaining his consent to search the backpack. Therefore, whether the evidence must be suppressed depends upon whether Hicks was "in custody" at the time the officer requested his consent to search.

---

[3] As Hicks acknowledges, there is no federal constitutional right to counsel before consenting to a search, even if the suspect is in custody. *See United States v. Lagrone*, 43 F.3d 332, 337 (7th Cir. 1994).

[10] Our Supreme Court has explained the distinction between custodial encounters, where *Pirtle* applies, and non-custodial encounters, where it does not. In making this distinction,

> the "ultimate inquiry" is whether there was a "formal arrest" or a " 'restraint on freedom of movement' of the degree associated with a formal arrest." *Luna v. State*, 788 N.E.2d 832, 833 (Ind. 2003) (quoting *California v. Beheler*, 463 U.S. 1121, 1125, 103 S. Ct. 3517, 3520, 77 L.Ed.2d 1275, 1279 (1983)). In answering this question, courts consider all circumstances surrounding the encounter and "largely appl[y] an objective test asking whether a reasonable person under the same circumstances would believe that she was under arrest or not free to resist the entreaties of the police." *Jones v. State*, 655 N.E.2d 49, 55 (Ind. 1995).

*Meredith v. State*, 906 N.E.2d 867, 873 (Ind. 2009). And, although a person who is stopped by the police for investigation of a traffic violation is "seized" and momentarily not free to go, ordinarily that does not constitute "custody" for purposes of *Pirtle*. *Id.*

[11] Thus, a *Pirtle* advisement is not required in an ordinary investigative detention, but is required in "full-blown custodial interrogations." *Id.* For the latter, courts look at whether there are circumstances showing "objectively overpowering, coercive, or restraining police behavior, such that the facts demonstrate a degree associated with a formal arrest." *Id.* at 873-74 (quotation and citation omitted).

> A non-exhaustive list of relevant factors our cases have identified [to make such a determination] includes: whether the defendant was read his *Miranda* rights, handcuffed, restrained in any way,

or told that he was a suspect in a crime, *e.g., Torres v. State*, 673 N.E.2d 472, 474 (Ind. 1996); how vigorous was the law enforcement interrogation, *e.g., Sellmer v. State*, 842 N.E.2d 358, 363–65 (Ind. 2006); whether police suggested the defendant should cooperate, implied adverse consequences for noncooperation, or suggested that the defendant was not free to go about his business, *e.g., id.*; *Clarke*[ *v. State*], 868 N.E.2d [1114,] 1120–21 [(Ind. 2007)]; and the length of the detention, *e.g., Cooley v. State*, 682 N.E.2d 1277, 1279 (Ind. 1997).

*Id*. at 874.

[12] Here, the evidence shows nothing more than an ordinary investigative detention of Hicks. Officer Birt stopped him for a traffic infraction and because he met the description of a person suspected of vehicle break-ins. He asked Hicks for his identification, called that information in to dispatch, and waited to see if Hicks had any outstanding warrants. All of that activity is incident to normal traffic stops. *Id*. at 873. Moreover, Hicks was not *Mirandized*, nor was he handcuffed or otherwise physically restrained at the time of the request for consent. The officers did not: tell Hicks he was a suspect in a crime; interrogate him; question him regarding drugs; or suggest that he should cooperate or imply adverse consequences if he did not consent to a search. *Cf. Sellmer*, 842 N.E.2d at 364-65 (holding defendant was in custody for purposes of *Pirtle* where the police asked to search the car three to five times before obtaining her consent; police "came extremely close" to asking incriminating questions; and police informed defendant it was "in [her] best interest" to cooperate when she asked if she was required to let them search the car). The officers simply asked

Hicks for his identification and "[stood] around waiting" for the confirmation on the warrant until Officer Birt asked for consent to search the backpack. Tr. at 7. And the duration of the detention was not unusually lengthy. Thus, although Hicks was detained pursuant to an investigatory stop, he was not in custody for purposes of *Pirtle*. The trial court did not err in denying the motion to suppress.

[13] Affirmed.

Kirsch, J., and Pyle, J., concur.