# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 30 2020, 10:16 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela N. Sanchez
Assistant Section Chief, Criminal
Appeals
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Matthew J. Lorenzo
Lorenzo Bevers Braman &
Connell, LLP
Seymour, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

State of Indiana,

*Appellant-Plaintiff,*

v.

Shannon Christine Covey,

*Appellee-Defendant.*

November 30, 2020

Court of Appeals Case No.
20A-CR-950

Appeal from the
Jackson Circuit Court

The Honorable
Chris D. Monroe, Senior Judge

Trial Court Cause No.
36C01-1910-CM-1151

**Kirsch, Judge.**

[1] After being charged with operating a vehicle while intoxicated endangering a person,[1] a Class A misdemeanor, and operating a vehicle with a blood alcohol content of .08 or more,[2] a Class C misdemeanor, Shannon Christine Covey ("Covey") filed a motion to suppress evidence obtained during the traffic stop. The trial court granted the motion. The State appeals this ruling and raises three issues. We address two of those issues,[3] which we restate as:

> I. Whether Covey's traffic infraction provided sufficient grounds to stop Covey under both the federal and state constitutions;

> II. Whether the officer who stopped Covey entrapped her into committing the infraction.

[2] We reverse and remand for further proceedings.

## Facts and Procedural History

[3] At approximately 12:11 a.m. on October 24, 2019, Covey was leaving a Seymour, Indiana bar called "The Rocks" ("the bar"), where she had attended a darts tournament. *Tr. Vol. 2* at 46. Covey had been drinking earlier that evening but stopped drinking three hours before she left the bar. *Id*. at 52. Indiana State Police Trooper Stephen Stoneking ("Trooper Stoneking") pulled

---

[1] *See* Ind. Code § 9-30-5-2(a), (b).

[2] *See* Ind. Code § 9-30-5-1(a).

[3] We chose to not address the State's argument that the officer had a legal basis to stop Covey because he observed signs that she was driving while intoxicated. The State's argument on that issue asks us to reweigh the evidence, which we may not do. *See State v. Renzulli*, 958 N.E.2d 1143, 1146 (Ind. 2011).

out behind Covey as she was waiting in the left turn lane of an intersection in Seymour. *Id*. at 8, 11.

[4] As Trooper Stoneking followed Covey, he believed she exhibited signs of intoxication. *Id*. at 10, 18, 31, 34-36, 44. Trooper Stoneking followed Covey three miles through Seymour. *Id*. at 51. Covey later testified that Trooper Stoneking "followed me the whole way on my bumper," which made her nervous. *Id*. at 48, 51. Covey switched lanes because she believed Trooper Stoneking was going to pull her over for being in the passing lane. *Id*. at 54. Covey signaled a lane change to move from the left lane to the right lane. *Id*. at 50-51. When Trooper Stoneking determined that Covey made the lane change without signaling for at least 200 feet before changing lanes, he initiated the traffic stop. *Id*. at 21, 51. After the traffic stop, Covey tested as having a blood alcohol level of .11. *Id*. at 54.

[5] On October 24, 2019, the State charged Covey with Class A misdemeanor operating a vehicle while intoxicated endangering a person and Class C misdemeanor operating a vehicle with a blood alcohol content of .08 or more. *Appellant's App. Vol. 2* at 8. Covey filed a motion to suppress any evidence collected during the traffic stop, and the trial court heard the motion on February 26, 2020. *Id*. at 27-28; *Tr. Vol. 2* at 1.

[6] At the hearing, Covey testified that she had noticed Trooper Stoneking in his marked police vehicle as soon as he got behind her near the bar. *Tr. Vol.* 2 at 47. She testified that Trooper Stoneking "followed me the whole way on my

bumper," which made her nervous. *Id.* at 48, 51. During cross-examination, Covey testified as follows about the distance she travelled after she activated her turn signal before switching lanes:

> Q. Okay. Now, do you recall that signal that you made before you changed lanes?
>
> A. Yes.
>
> Q. Do you recall how far you were before the point of crossing the lane change that you made the signal?
>
> A. No. I just turned on my signal and was getting over.
>
> Q. So you flipped on the signal right before you changed lanes?
>
> A. Yes. I flipped it on and moved over. I'm not sure how long it was on for.
>
> Q. So you did not turn it on, travel two hundred (200) feet and then change lanes. Right?
>
> A. No.

*Id.* at 53.

[7]     During her closing argument, Covey's attorney addressed whether Covey had travelled at least 200 feet with her turn signal on before she changed lanes: "She signals to get over, she flips her signal on and gets over. Did she do it exactly two hundred (200) feet? She testifies, 'I don't think so.'" *Id.* at 55-56.

Covey also argued that Trooper Stoneking had entrapped her into committing a traffic infraction: ". . . I argue to the Court that following someone so closely to make them signal to get out of your way and then saying they didn't signal enough is entrapment." *Id*. at 57.

[8] On March 25, 2020, the trial court granted Covey's motion to suppress without oral or written explanation. *Appellant's App. Vol. 2* at 6. The State now appeals. We will provide additional facts as necessary.

## Discussion and Decision

[9] Pursuant to Indiana Code section 35-38-4-2(5), the State appeals from an order granting a motion to suppress evidence that effectively precludes further prosecution. When the State appeals from a negative judgment, as here, it must show that the trial court's ruling on the suppression motion was contrary to law. *State v. Renzulli*, 958 N.E.2d 1143, 1146 (Ind. 2011). In reviewing such a ruling, we determine whether the record discloses substantial evidence of probative value that supports the trial court's decision. *Id*. We do not reweigh the evidence but consider conflicting evidence most favorable to the trial court's ruling. *Id.* We review the trial court's legal conclusions de novo. *State v. Brown*, 70 N.E.3d 331, 335 (Ind. 2017).

## I. Traffic Infraction as Basis for Stop

[10] The State first argues that under the Fourth Amendment to the United States Constitution, Trooper Stoneking had legal authority to stop Covey because the

evidence was undisputed that Covey committed a traffic infraction. This, the State contends, makes the trial court's ruling contrary to law.

[11] A traffic stop is permissible when an officer has reasonable suspicion that a traffic law has been violated. *Sanders v. State*, 989 N.E.2d 332, 335 (Ind. 2013). "Because a traffic stop is a seizure under the Fourth Amendment, police may not initiate a stop for any conceivable reason, but must possess at least reasonable suspicion that a traffic law has been violated or that other criminal activity is taking place." *Meredith v. State*, 906 N.E.2d 867, 869 (Ind. 2009).

> We often call these encounters *Terry* Stops, where an officer may "stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" [*Robinson v. State*, 5 N.E.3d 362, 367 (Ind. 2014)] (quoting *United States v. Sokolow*, 490 U.S. 1, 7 . . . (1989)). Traffic stops typically fall into this *Terry* Stop category, and, therefore, must be based upon reasonable suspicion. *Meredith*, 906 N.E.2d at 869 (citing *Whren v. United States*, 517 U.S. 806, 809-10 . . . (1996)).

*Marshall v. State*, 117 N.E.3d 1254, 1259 (Ind. 2019). When a police officer believes in good faith that a person has committed a traffic infraction, the officer may stop that person. Ind. Code § 34-28-5-3(a). We review a trial court's determination regarding reasonable suspicion de novo. *Burkes v. State*, 842 N.E.2d 426, 430 (Ind. Ct. App. 2006).

[12] "A signal of intention to turn right or left shall be given continuously during not less than the last two hundred (200) feet traveled by a vehicle before turning or *changing lanes*." Ind. Code § 9-21-8-25 (emphasis added). Here, Trooper

Stoneking observed Covey activate her turn signal and change lanes before she had travelled 200 feet with her turn signal on. *Tr. Vol. 2* at 50-51. Trooper Stoneking testified that Covey's turn signal flashed only once while she changed lanes. *Id*. at 40.

[13] Implicit in the State's argument is the contention that the evidence was undisputed that Covey did not drive for the statutorily required distance with her turn signal on before changing lanes. Covey disagrees that the evidence was undisputed, pointing to the following question by the deputy prosecutor during cross examination and her response:

> Q. So you did not turn [your turn signal] on, travel two hundred (200) feet and then change lanes. Right?
>
> A. No.

*Tr. Vol. 2* at 53. Covey interprets this exchange as follows: "Covey clearly answered in the negative to the prosecutor's question that his assertion was correct." *Appellee Br*. at 12. In other words, Covey appears to argue that her response of "No" to the prosecutor's question was the equivalent of responding, "No, that is not true," or "No, it's not true that I did not travel at least 200 feet with my turn signal on before changing lanes."

[14] The State responds that interpreting this testimony within its broader context established that Covey was, in fact, admitting that she did not travel 200 feet with her turn signal on before changing lanes. The State first refers to the

above-recited testimony but includes testimony immediately preceding the exchange cited by Covey:

Q. Okay. Now, do you recall that signal that you made before you changed lanes?

A. Yes.

Q. Do you recall how far you were before the point of crossing the lane change that you made the signal?

A. No. I just turned on my signal and was getting over.

Q. So you flipped on the signal right before you changed lanes?

A. Yes. I flipped it on and moved over. I'm not sure how long it was on for.

Q. So you did not turn it on, travel two hundred (200) feet and then change lanes. Right?

A. No.

*Tr. Vol. 2* at 53. The State also refers to Covey's closing argument, directing us to the following statement made by Covey's attorney: "She signals to get over, she flips her signal on and gets over. Did she do it exactly two hundred (200) feet? She testifies, 'I don't think so.'" *Id*. at 56. This broader context, the State argues, leaves only one reasonable interpretation of Covey's testimony: she

acknowledged she did not drive with her turn signal on for at least 200 feet before changing lanes.

[15]     We agree with the State's interpretation of Covey's testimony. Therefore, it was undisputed that Covey committed a traffic infraction. This gave Trooper Stoneking the right to stop Covey. *Sanders*, 989 N.E.2d at 335; Ind. Code § 34-28-5-3(a); Ind. Code § 9-21-8-25. Therefore, under a Fourth Amendment analysis, the trial court's granting of Covey's motion to suppress was contrary to law. *Renzulli*, 958 N.E.2d at 1146.

[16]     The State next argues that granting Covey's motion to suppress pursuant to Article 1, section 11 of the Indiana Constitution was also erroneous as a matter of law because Trooper Stoneking's conduct was reasonable. Even though Article 1, section 11 uses the same language as the Fourth Amendment, we apply a separate test to assess the legality of police conduct under the Indiana Constitution. *Hardin v. State*, 148 N.E.3d 932, 934 (Ind. 2020). The reasonableness of police conduct under the Indiana Constitution is reviewed under the totality of the circumstances. *Id*. The principal considerations balance "1) the degree of concern, suspicion, or knowledge that a violation has occurred; 2) the degree of intrusion the method of search or seizure imposes on the citizen's ordinary activities; and 3) the extent of law enforcement needs." *State v. Washington*, 898 N.E.2d 1200, 1206 (Ind. 2008).

[17]     The State argues, as it did in its argument under the Fourth Amendment, that the undisputed evidence showed that Covey failed to have her turn signal on for

at least 200 feet before changing lanes. We agree with the State's characterization of the evidence. Moreover, we agree with the State's analysis that Trooper Stoneking's conduct was reasonable under the Indiana Constitution. First, the undisputed evidence established a high degree of suspicion that Covey had engaged in unlawful activity.[4] Trooper Stoneking observed Covey commit a traffic infraction. *Tr. Vol. 2* at 21-50-51. Covey admitted to committing the infraction. *Id*. at 53. Therefore, the degree of suspicion that Covey had engaged in illegal activity was high. *See Washington*, 898 at 1206.

[18] Second, the degree of intrusion on Covey's activities was not significant. While the stop necessarily impeded Covey's ordinary freedom of movement, there is no evidence that the decision to stop restrained her freedom of movement to a greater degree than other traffic stops. *See id.*

[19] Third, law enforcement needs were high. Trooper Stoneking had a legitimate interest in stopping Covey because she committed a traffic infraction. *See Marshall*, 117 N.E.3d at 1262 ("[L]aw enforcement has at least a legitimate, if not a compelling, need to enforce traffic-safety laws, including speeding limits. So long as governments set speed limits for public safety, those limits will need

---

[4] Covey argues that the degree of suspicion that she had engaged in unlawful activity was low because at the hearing on her motion to suppress, she denied that she had failed to drive for at least 200 feet with her turn signal on before changing lanes. *See Appellee's Br*. at 12. In other words, she contends that she denied committing a traffic infraction. However, we rejected this interpretation of her testimony in the previous section of our decision, so Covey's interpretation of her testimony has no bearing on how we resolve whether the degree of suspicion that she had engaged in illegal behavior was high.

to be enforced.").  In stopping Covey, Trooper Stoneking acted consistently with the State's compelling interest in enforcing traffic laws.

[20]    After reviewing the totality of the circumstances, we conclude that the stop of Covey was reasonable under Article 1, section 11 of the Indiana Constitution. *Washington*, 898 N.E.2d at 1206.  Therefore, Article I, section 11 of the Indiana Constitution provided no basis to grant Covey's motion to suppress.

## II.  Entrapment

[21]    The State correctly observes that Covey argued at the suppression hearing that if she did, in fact, commit a traffic infraction, Trooper Stoneking entrapped her into doing so.  On appeal, Covey repeats this entrapment argument, contending she would not have changed lanes if Trooper Stoneking had not followed her so closely, which made her "slightly nervous."  *Appellee's Br*. at 19; *see also Tr. Vol. 2* at 52 ("a little nervous").  The State argues that the entrapment defense would be an erroneous basis, as a matter of law, to grant Covey's motion to suppress.

[22]    Entrapment is a defense codified at Indiana Code section 35-41-3-9, which provides:

> (a) It is a defense that:
>
> (1) the prohibited conduct of the person was the product of a law enforcement officer, or his agent, using persuasion or other means likely to cause the person to engage in the conduct; and
>
> (2) the person was not predisposed to commit the offense.

(b) Conduct merely affording a person an opportunity to commit the offense does not constitute entrapment.

*Id*. The defendant bears the burden to prove that police induced her to commit the illegal conduct that she would not otherwise have committed, and merely providing the ordinary opportunity to engage in illegal conduct is not enough. *Griesemer v. State*, 26 N.E.3d 606, 609 (Ind. 2015). Police can entrap an individual only if they directly participate in the illegal conduct. *Id*.

[23] Here, Covey did not claim at the suppression hearing that Trooper Stoneking's actions prevented her from signaling her lane change for the statutorily required distance. Rather, she argued "that following someone so closely to make them signal to get out of your way and then saying they didn't signal enough is entrapment." *Tr. Vol. 2* at 57. Covey testified that she changed lanes in hopes that Trooper Stoneking would pass her, *id.* at 50, but she did not claim that Trooper Stoneking's actions made it unsafe or unreasonable for her to continue in the left lane for 200 or more feet after she activated her turn signal. Covey did not claim that Trooper Stoneking committed any driving maneuver or other action that created an emergency situation requiring her to abruptly change lanes. Furthermore, on appeal, Covey cites no legal authority for the proposition that an officer entraps a motorist into committing an infraction simply by driving behind the motorist. Thus, there is no evidence that Trooper Stoneking used persuasion or other means likely to cause Covey to commit an infraction, and there is likewise no evidence that Trooper Stoneking directly engaged in the prohibited conduct, *i.e.*, signaling his own lane change for less

the statutorily required distance, or committed any other traffic infraction. *See* Ind. Code § 35-41-3-9; *Griesemer*, 26 N.E.3d at 609. Thus, there is no basis, as a matter of law, to conclude that Trooper Stoneking entrapped Covey into committing the traffic infraction.

[24] Reversed and remanded.

Pyle, J., and Tavitas, J., concur.